616 So.2d 177 (1993)
NORTH AMERICAN VAN LINES, Florida Moving Systems, Inc., AA Moving & Storage, Thomas B. Deneen and Claudia Deneen, Appellants,
v.
James COLLYER and Patricia Collyer, Appellees.
No. 92-1667.
District Court of Appeal of Florida, Fifth District.
April 2, 1993.
David E. Silverman of Krasny and Dettmer, P.A., Melbourne, for appellants.
J. John Barker, Melbourne, for appellees.
HARRIS, Judge.
James and Patricia Collyer sued North American Van Lines, Florida Moving Systems, Inc., AA Moving and Storage, and Thomas B. and Claudia Deneen for damages arising from the contractual relationship between the parties. On motion, the trial court found that the civil action should be abated and the matter, pursuant to the contract, referred to arbitration. However, the trial court rescinded its order when the Collyers asserted that they could not pay, and the arbitrator would not waive, a required *178 deposit "to defray the expense of the arbitration, including the arbitrator's fee... ." The trial court held:
The combined effect of the arbitration provisions of the contracts attached to the Motion to Stay and Abate Proceedings; and the deposit requirement of the American Arbitration Association is to deprive the Plaintiffs of any avenue of redress. Proceeding in court is precluded by the arbitration provisions and proceeding in arbitration is precluded by Plaintiff's inability to pay the deposit required.
The trial court, in effect, determined that the Collyers' inability to pay the agreed costs excused them from the terms of their contract. We reverse.
Section 682.03, Florida Statutes, provides in relevant part:
A party to an agreement or provision for arbitration subject to this law claiming the neglect or refusal of another party thereto to comply therewith may make application to the court for an order directing the parties to proceed with arbitration in accordance with the terms thereof. If the court is satisfied that no substantial issue exists as to the making of the agreement or provision, it shall summarily hear and determine the issue and, according to its determination, shall grant or deny the application. [Emphasis added].
This language has been interpreted to mean:
The trial court's role when considering applications to compel arbitration under Section 682.03, Florida Statutes (1987), is limited to determining (1) whether a valid written agreement exists containing an arbitration clause, (2) whether an arbitrable issue exists, and (3) whether the right to arbitrate was waived.
Piercy v. School Bd. of Washington County, Fla., 576 So.2d 806, 807 (Fla. 1st DCA 1991). If the court determines that the right to arbitrate is not in dispute, "permitting the parties to litigate the dispute in the courts instead of proceeding by arbitration as agreed would constitute a departure from the essential requirements of law." Vic Potamkin Chevrolet, Inc. v. Bloom, 386 So.2d 286 (Fla. 3d DCA 1980). This conclusion is buttressed by the fact that public policy favors arbitration as an alternative to litigation. Larry Kent Homes, Inc. v. Empire of America FSA, 474 So.2d 868 (Fla. 5th DCA 1985), rev. denied, Anderton v. Larry Kent Homes, Inc., 484 So.2d 7 (Fla. 1986).
In the instant case, the order appealed from contains no finding that the arbitration clause is invalid, that no arbitrable issue exists, or that the defendants somehow waived their right to arbitration. Rather, the sole basis for the trial court's determination that the defendants are not entitled to arbitration is the fact that the Collyers cannot afford the deposit to cover the expenses of arbitrating. In considering the Collyers' financial status and their resulting inability to comply with the arbitration provision, the trial court exceeded the scope of its limited role as defined by section 682.03 and Piercy. Having determined at the initial hearing on the defendants' motion to compel arbitration that the agreement was valid, that an arbitrable issue existed, and that the right to arbitration had not been waived, the trial court was without authority to ignore the parties' agreement to arbitrate merely because of the Collyers' financial circumstances.
The contract language is clear: the Collyers, in an arm's length transaction, agreed to settle all disputes through arbitration under the rules of the American Arbitration Association. Those rules provide that the AAA may require the parties to deposit, "in advance of any hearings," [emphasis added] such amount that the AAA deems necessary to defray the expense of the arbitration and that the party initiating the arbitration must advance the necessary fee. See also Kessel v. Dugand, 508 So.2d 45, 46 (Fla. 4th DCA 1987) ("We hold that the initial payment of the arbitration expenses required to commence the proceeding should be paid by the party initiating it, i.e., the party pursuing the claim.").
Given the clear and unambiguous agreement to arbitrate, it is simply against *179 general contract principles to permit the Collyers to avoid this aspect of their contractual bargain. A court is not empowered to rewrite a clear and unambiguous provision, nor should it attempt to make an otherwise valid contract more reasonable for one of the parties. Medical Center Health Plan v. Brick, 572 So.2d 548 (Fla. 1st DCA 1990). Moreover, unexpected difficulty or expense will not excuse a party to a contract from performance. Bumby & Stimpson, Inc. v. Peninsula Utilities Corp., 169 So.2d 499 (Fla. 3d DCA 1964). Finally, a party who, by his own acts, prevents performance of a contract provision cannot take advantage of his own wrong. Hart v. Pierce, 98 Fla. 1087, 125 So. 243 (1929); Walker v. Chancey, 96 Fla. 82, 117 So. 705 (1928).
The effect of the order appealed from is to permit the Collyers to avoid arbitration and proceed to circuit court, where they wanted to be in the first place, simply because they are unable to perform an unambiguous contract provision to which they agreed. Regardless of their inability to seek relief from the defendants' alleged wrongdoing, this result ignores public policy favoring arbitration, defies well-established contract law, and is inherently unfair to the other contracting parties. As stated in City of Tampa v. City of Port Tampa, 127 So.2d 119, 120 (Fla. 2d DCA 1961) quoting from 12 Am.Jur., Contracts, § 362:
Inconvenience or the cost of compliance, though they might make compliance a hardship, cannot excuse a party from the performance of an absolute and unqualified undertaking to do a thing that is possible and lawful. Parties sui juris bind themselves by their lawful contracts, and courts cannot alter them because they work a hardship. The rights of the parties must be measured by the contract which they themselves made. A contract is not invalid, nor is the obligor therein in any manner discharged from its binding effect, because it turns out to be difficult or burdensome to perform. It has been said that difficulties, even if unforeseen and however great, are no excuse, and that the fact that a contract has become more burdensome in its operation than was anticipated is not ground for its rescission. * * * It has also been said that the answer to the objection of hardship is that it might have been guarded against by a proper stipulation.
REVERSED and REMANDED for further action consistent with this opinion.
GOSHORN, C.J., concurs.
GRIFFIN, J., concurs specially, with opinion.
GRIFFIN, Judge, concurring specially.
Although I agree with the result reached by the majority, I write separately to emphasize the danger to the unwary consumer which is illustrated by this case.
In 1988, the Collyers entered into a contract with a local moving company ("Florida Moving") to pick up their household goods in Indialantic and store them. This form contract contained a standard provision requiring arbitration of any disputes through the American Arbitration Association ("AAA").[1]
The Collyers were billed monthly for the storage charges, which they claim they typically paid quarterly.[2] After approximately a year and one-half, in December, 1989, Mr. Collyer claims that he went to the office of Florida Moving, brought his account current, informed them that he and his family were moving to England and that he would be in contact when settled there to request an estimate for shipping and to get a final balance due on the account. In February, 1990, he called Florida Moving by telephone from England to determine what was happening with his account and to request the cost of shipping the goods to England. In response, he received a letter dated March 22, 1990, that contained a *180 schedule of various charges, including transportation to England, replacement cost protection insurance, an overseas pack-up charge of $550, and $200 in delinquent storage charges. The letter included a demand for immediate payment of the storage charges and advised that if that amount was not paid within two weeks, the Collyers' household goods would be sold at public auction.
Upon receipt of the March 22 letter, Mr. Collyer telephoned Florida Moving to advise that their statement contained a discrepancy in that the $550 for overseas pack-up had already been paid. Appellants demanded proof, which was sent by appellee by FAX. Collyer claims that no one advised him in any of these communications that a public auction of his household goods had been scheduled for May 7.[3] On that date the Collyers' household goods were sold at public auction to satisfy the $200 delinquent storage charges.
When the Collyers filed their arbitration claim with AAA they were required to pay a $300 filing fee and to estimate the amount of their claim. Their estimate was $90,000. Thereafter, as authorized by its rules, AAA required an additional deposit in the amount of $2,350. AAA will not proceed with arbitration unless these monies are paid. The parties have stipulated that, indeed, the Collyers do not have the funds necessary to meet this requirement, and are, therefore, unable to arbitrate.
Assuming, arguendo, that the personal effects of the Collyers were lost by the bad faith and negligence of the appellants, they are without a remedy because they cannot afford the only available forum. By entering into the arbitration agreement, they contractually relinquished their right of access to the courts in favor of a private "alternative dispute resolution" method which they cannot afford to access. It will not matter to a court that when the consumer signed the form agreement which included the arbitration clause, he or she was unaware of the front-end fee requirement in the AAA rules, or that these fees can be in the thousands of dollars. A.P. Brown Co. v. Superior Court, 490 P.2d 867 (Ariz. App. 1971). Nor will it matter that the consumer is unable to pay the fee. As explained by the majority opinion, the arbitration agreement will be enforced according to its terms.
NOTES
[1] The majority refers to this as an "arms length transaction", a questionable conclusion that may or may not have legal significance if appropriately raised. Broemmer v. Abortion Services of Phoenix, Ltd., 173 Ariz. 148, 840 P.2d 1013 (Ariz. 1992).
[2] The following narrative comes from the complaint filed below by appellees.
[3] Florida Moving did send a letter by regular mail in April, but it is unclear when it was received.