**ROLLINS, INC. and Orkin Exterminating Co., Inc. Petitioners,**

v.

**Judy FOSTER, Respondent.**

**Civil Action No. 97–T–945–N.**

United States District Court, M.D. Alabama, Northern Division.

Jan. 20, 1998.

William S. Cox, III, John M. Johnson, Julia S. McIntyre, Lightfoot, Franklin & White, L.L.C., Birmingham, AL, for Petitioners.

L. Cooper Rutland, Jr., Rutland & Braswell, Union Springs, AL, for Respondent.

### MEMORANDUM OPINION

MYRON H. THOMPSON, Chief Judge.

Relying on the Federal Arbitration Act (FAA), 9 U.S.C.A. §§ 1–16, petitioners Rollins, Inc. and Orkin Exterminating Co., Inc. brought this petition in federal court on April 11, 1997, seeking to compel respondent Judy Foster to arbitrate the claims she has brought against them in state court, and seeking to have this federal court stay the state-court proceedings filed against them. Foster's state-court complaint, filed on February 25, 1997, arose out of the procurement of extermination services, and included counts for misrepresentation, breach of contract, conspiracy, negligent and wanton supervision, and declaratory relief regarding the validity of the arbitration clause.

In considering Rollins and Orkin's petition to compel arbitration, the court is presented with two issues. The first is whether the arbitration clause in the extermination contract was fraudulently induced, thereby invalidating the mandatory arbitration provision. The second issue presents the novel question of whether an arbitration clause is unconscionable, and therefore unenforceable, because of a party's inability to pay for the costs of the arbitration proceeding. This court has jurisdiction under 28 U.S.C.A. § 1332. For the reasons set forth below, the court finds, based on the evidence presented by the parties, that the arbitration petition should be granted.

### I. FACTUAL BACKGROUND

On November 20, 1995, Foster contacted Orkin about spraying her trailer home for roaches. Orkin responded by sending an inspector to Foster's home to determine what type of treatment she needed. The inspector informed Foster that she needed termite treatments, which would cost about $37 or $38 per month.[1] Foster told the inspector that she wanted only three months of coverage.[2] The inspector then gave Foster a clipboard upon which he placed a series of forms for her to sign. Some of the forms had writing on both sides, but the inspector did not show these sides to Foster.[3] Because Foster had completed only the ninth grade of high school and had limited reading ability, she was unable to understand the words of the contract she signed.[4] Foster also alleges

---

1. Foster stated in her deposition, however, that it was her understanding that she would receive treatment for roaches only. Transcript of Foster deposition, attached to joint submission of evidence as exhibit B, at 36.

2. State-court complaint, attached to joint submission of evidence as exhibit A, ¶ 8.

3. Transcript of Foster deposition, at 21–22.

4. Id. at 32. During her deposition, opposing counsel asked Foster to read paragraph four of the first page of the contract she signed. The paragraph states in bold type, "CAUTION—IT IS IMPORTANT THAT I THOROUGHLY READ THIS AGREEMENT BEFORE I SIGN IT. I WILL NOT SIGN THIS AGREEMENT BEFORE I READ IT OR IF IT CONTAINS ANY BLANK SPACE. I WILL KEEP IT TO PROTECT MY LEGAL RIGHTS." Petitioners' Exh. 1, attached

that some of the papers she signed contained blank spaces, which were later filled in by Orkin employees.[5]

Foster contends that the inspector did not leave a copy of the forms she had signed.[6] The inspector does not remember specifically whether he left a copy of the contract with Foster, but usually leaves a copy with the customer.[7] The actual contract differed dramatically from what Foster had requested: rather than being for three months, the contract established a two-year service relationship for a total cost of $2,200. Further, the

contract included a credit agreement, whereby Foster would pay interest on the cost of the services before even receiving such services.[8]

The arbitration clause at issue in this case is found in the "General Terms and Conditions" section on the other side of the contract, under the heading "9. Mediation/Arbitration." The clause states that disputes arising out of or related to the contract must first be submitted to four hours of mediation, and if that process should fail to resolve the dispute, arbitration must be pursued.[9] The

to Foster deposition. Foster was able to read the words "It is and that I and before, off [sic] it, and keep it to." Transcript of Foster deposition, at 32.

5. State-court complaint, ¶ 8. However, during her deposition Foster stated that some of the

figures on the contract were filled in. Foster deposition, at 34.

6. *Id.* at 31.

7. Transcript of Allen Paulding deposition, attached to joint submission of evidence as exhibit D, at 50.

8. The contract that Foster signed contains, in part, the following charges:

"1.  Services Purchased:
|     |     |     |
|-----|-----|-----|
| a. | Initial Treatment | $ 1060 |
| b. | Other [Supports] | $ 890 |
| c. | Additional Renewal for [2] years | $ 250 |
| d. | Total (sum a + b +c) | $ 2200 |

2.  Other items:
|     |     |     |
|-----|-----|-----|
| a. | Sales Taxes | $ 0 |
| b. | Other Fees Paid to Public Officials | $ 0 |
|    | Total (sum a + b) | $ 0 |

| | | |
|---|---|---|
| 3. | TOTAL: Cash Price (sum 1 + 2) | $ 2200 |
| 4. | LESS: Cash Down Payment | $ 0 |
| 5. | Unpaid Balance of Cash Price (3 minus 4) | $ 2200 |
| 6. | Creditor—Orkin Exterminating Company, Inc | |
| 7. | Amount Financed (the amount of credit provided on my behalf | $ 2200 |
| 8. | FINANCE CHARGE (the dollar amount my credit will cost) | $ 663.08 |
| 9. | Total of Payments (the amount I will have paid when I have made all scheduled payments) | $ 2863.08 |
| 10. | Total Sale Price (the total cost of my purchase on credit, including my down payment of $ _____ | $ 2663.08 |
| 11. | ANNUAL PERCENTAGE RATE (the cost of my credit as a yearly rate) | [18%] |

12.  Payment Schedule: I will pay [36] monthly payments of $ [79.53] each commencing on [Dec 30] 19[95] and on the same day of each succeeding month until this obligation is paid in full."

Orkin Exterminating Company, Inc. Subterranean Termite Agreement with Judy Foster, attached to joint submission of evidence as exhibit B.

9. The arbitration clause states in its entirety:

"In the event of any dispute (as defined herein below) arising out of or relating to this contract, or the breach thereof, the parties first agree to participate in at least four (4) hours of mediation in accordance with the commercial mediation rules of the American Arbitration Association, before having recourse to arbitration, or judicial forum subsequent thereto.

"If the mediation procedure provided for herein does not resolve any such dispute, the parties agree that all disputes between the parties shall be resolved by binding arbitration admin-

istered by the American Arbitration Association in accordance with its commercial arbitration rules and pursuant to the federal arbitration act, 9 U.S.C. Section 1 et seq. judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction.

"The term 'disputes' shall mean any action, dispute, claim or controversy of any kind, whether in contract or in tort, under either statutory or common law or both, now existing or hereafter arising between the parties in any way pertaining to (1) this contract or any related agreement, document or instrument; (2) any incidents, omissions, acts, practices or oc-

clause also states that the award of the arbitration "shall be final, binding and non-appealable." The contract also provides that it may be assigned to Rollins Acceptance Company, an unincorporated division of Rollins, Inc.[10]

Two weeks after her home was inspected, Foster received a payment book from Orkin.[11] Foster contacted Orkin after she received the payment book to question the charges.[12] According to Foster's state-court complaint, she attempted to make the monthly payments to Rollins after receiving threats of "garnishments, lawsuits and/or other adverse credit reports." [13] Foster then filed suit against Orkin, Rollins, and different fictitious defendants in state court for damages suffered as a result of the contract. Foster's demand for punitive and compensatory damages, as well as the fact that she has not controverted Rollins and Orkin's assertion that the amount of damages she seeks exceeds $75,000,[14] clearly indicates that the amount in controversy exceeds $75,000. Among the counts of Foster's complaint, Foster alleges that the arbitration clause was "procured by Defendants through fraud, suppression and/or deceit." [15] Rollins and Orkin filed their petition to compel arbitration and stay the state court proceedings in the Northern District Court of Alabama on April 11, 1997. On April 22, 1997, Foster made a motion to dismiss the motion, as well as to transfer the proceedings to the Middle District of Alabama.

On June 17, 1997, the court granted Foster's motion for transfer. On July 18, 1997, pursuant to Foster's statement that she would no longer pursue her motion to dismiss, this court denied Foster's motion.

## II. DISCUSSION

Foster raises two arguments as to why this court should refuse to issue an order compelling her to arbitrate her claims against Rollins and Orkin. The first is that the contract, including the arbitration clause, was fraudulently induced. The second is that the contract, including the arbitration clause, is unconscionable. Both arguments reach the same conclusion: the contract, and therefore the arbitration clause, is invalid and Foster should be permitted to pursue her claims in state court. However, as explained in greater detail below, neither argument is persuasive and Foster, pursuant to the contract she signed with Rollins and Orkin, will have to pursue her claims in arbitration.

### A.

The FAA makes enforceable a written arbitration provision in "a contract evidencing a transaction involving commerce." 9 U.S.C.A. § 2. Commerce is defined in the FAA as "commerce among the several states." 9 U.S.C.A. § 1. The requirement of interstate commerce is met here as Foster is a resident of Alabama and Rollins and Orkin were incorporated in Delaware and have their principal places of business in Georgia.[16]

Section 3 of the FAA requires a federal court to stay state court proceedings pending the outcome of arbitration for "any issue referable to arbitration under an agreement in writing for such arbitration." 9 U.S.C.A. § 3.[17] Section 4 further provides that, "upon

currences arising out of any service or product furnished or agreed to be furnished under this contract causing property damage to either party and it is asserted that the other party or its agents, employees or representatives may be liable, in whole or in part; (3) all claims by either party against the other for actual, consequential, punitive, exemplary or statutory damages, attorneys fees or penalties of any kind whatever; and (4) specific performance or the recovery of damages in tort, or pursuant to the provisions of the deceptive trade practices act. The award of the arbitrators issued pursuant hereto shall be final, binding and non-appealable."
*Id.*

**10.** Although Rollins and Orkin's arbitration petition states that the agreement was assigned to

Rollins, it does not specify when or how it was assigned. Rollins and Orkin's arbitration petition, ¶ 8.

**11.** Transcript of Foster deposition, at 31.

**12.** State-court complaint, ¶ 10.

**13.** *Id.* ¶ 11.

**14.** *Id.* ¶ 6.

**15.** *Id.* ¶ 35.

**16.** Rollins and Orkin's arbitration petition, at 2.

**17.** *See also Southland Corp. v. Keating,* 465 U.S. 1, 10–16, 104 S.Ct. 852, 858–61, 79 L.Ed.2d 1 (1984) (holding that an arbitration clause that is

being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue," a federal court should grant the petition. 9 U.S.C.A. § 4.

■ However, § 2 of the FAA prohibits the enforcement of an arbitration clause that is invalid "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C.A. § 2. In construing this section, the Supreme Court has stated that it "gives States [ ] method[s] for protecting consumers against unfair pressure to agree to a contract with an unwarranted arbitration provision." *Allied–Bruce Terminix v. Dobson,* 513 U.S. 265, 280–82, 115 S.Ct. 834, 843, 130 L.Ed.2d 753 (1995). It is a cardinal principle of federal arbitration law that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT & T Technologies, Inc. v. Communications Workers of America,* 475 U.S. 643, 648, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986) (quoting *United Steelworkers v. Warrior & Gulf Navig. Co.,* 363 U.S. 574, 583–84, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960)).

■ However, the Supreme Court held in *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 403–04, 87 S.Ct. 1801, 1806, 18 L.Ed.2d 1270 (1967), that, while a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit, § 4 permits a federal court to hear only claims involving fraud in the inducement of the arbitration clause itself and not claims of fraud in the inducement of the contract as a whole or generally; *Prima Paint's* mandate is that challenges to the validity of the contract as whole must be presented to the arbitrator. "Courts consistently have ... held that issues relating to the making and performance of a contract as a whole, not specific to the arbitration clause or agreement, should be heard by the arbitrator." *Rainbow Investments, Inc. v. Super 8 Mo-*

*tels, Inc.,* 973 F.Supp. 1387, 1389 (M.D.Ala. 1997) (Thompson, J.)

While *Prima Paint* dealt only with the validity of a contract in light of fraudulent inducement claims, the same principal applies to other challenges to an arbitration clause, such as those based on allegations of forgery, mutual mistake, unconscionability, and impossibility. *See, e.g., Coleman v. Prudential Bache Sec., Inc.,* 802 F.2d 1350, 1352 (11th Cir.1986) ("Claims alleging unconscionability, coercion, or confusion in signing the agreement generally should be determined by an arbitrator because those issues go to the formation of the entire contract rather than to the issue of misrepresentation in the signing of the arbitration agreement.") (citations omitted); *see also Benoay v. Prudential–Bache Sec., Inc.,* 805 F.2d 1437, 1441 (11th Cir.1986); *Miller v. Drexel Burnham Lambert. Inc.,* 791 F.2d 850, 854 (11th Cir. 1986). Thus, § 4 permits a federal court to hear only claims involving forgery, mutual mistake, unconscionability, and impossibility as to the arbitration clause itself and not claims of forgery, mutual mistake, unconscionability, and impossibility as to the contract as a whole or generally.

The court will therefore examine Foster's allegations regarding fraudulent inducement to determine, first, whether Foster has asserted a challenge under § 4, colorable in court rather than in arbitration, and, second, whether, if so, this challenge entitles her to avoid arbitration and proceed with her claims in state court.

1.

■ Foster claims that the arbitration clause was fraudulently induced because Rollins and Orkin misrepresented the true nature of the contract, "including the Arbitration Agreement," by placing the arbitration clause on the back of the contract in small

---

enforceable in federal court is equally enforceable in state court). The fact that Foster's original action was brought in state court could raise issues under the Anti–Injunction Act, 28 U.S.C.A. § 2283. *See Transouth Fin. Corp. v. Bell,* 975 F.Supp. 1305 (M.D.Ala.1997) (Thompson, J.). Indeed, at one time during this litigation, Foster moved to dismiss Rollins and Orkin's arbitration petition on the ground that the court should defer to concurrent state-court proceedings pur-

suant to the Colorado River doctrine, as discussed in *Moses H. Cone Mem. Hosp. v. Mercury Constr. Co.,* 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). However, pursuant to Foster's request, this court denied Foster's motion to dismiss without prejudice on July 18, 1997. Because Foster withdrew her motion and neither party raises the Anti–Injunction Act issue, the court will not consider deferring to the state court.

print with other contractual provisions, by failing to review the terms of the contract with her, by hurrying through the documents before she signed the contract, by failing to leave a copy of the contract for her review, and by taking advantage of her education and experience.[18] Foster also alleges that, "because [Orkin's employee] had misrepresented the entire contract to Ms. Foster, by its very nature, he had to have misrepresented that part containing the Arbitration Agreement." [19]

Foster's allegations do not overcome *Prima Paint*'s mandate. Foster's fraud-in-the-inducement challenge, as evidenced by her statement above, primarily concerns the validity of the contract as a whole: she argues that Orkin's employee misrepresented the entire contract, including the type of services she was purchasing, the cost of those services, as well as the arbitration clause. These assertions belie Foster's contention that the arbitration clause, by itself or independently, was fraudulently induced. Because Foster's allegations go to the contract as a whole, and not just to the arbitration clause, the proper venue for adjudication of her challenge is arbitration.

Admittedly, courts have found that some challenges that go to the "existence" of the contract fall outside *Prima Paint*'s mandate and thus present an issue for the court, rather than the arbitrator, to decide. *See, e.g., Chastain v. The Robinson–Humphrey Co.,* 957 F.2d 851, 855 (11th Cir.1992) (affirming district court's denial of motion to compel arbitration where plaintiff alleged she had never signed agreement containing arbitration clause); *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co., Inc.,* 925 F.2d 1136 (9th Cir.1991) (holding that court, rather than arbitrator, was to decide whether signatories had authority to bind plaintiffs to agreement); *Cancanon v. Smith, Barney, Harris, Upham & Co.,* 805 F.2d 998 (11th Cir.1986) (per curiam) (affirming district court's denial of motion to compel arbitration where defendants had either furtively obtained plaintiffs' signatures or forged plaintiffs' signatures on certain documents). As this court recognized in *Rainbow Invest-*

*ments,* the "common feature of most, if not all, such cases is a viable claim of lack of assent to the contract, and by extension, the arbitration clause it contains." 973 F.Supp. at 1391. The Eleventh Circuit has explained:

"Under normal circumstances, an arbitration provision within a contract admittedly signed by the contractual parties is sufficient to require the district court to send any controversies to arbitration. Under such circumstances, the parties have at least presumptively agreed to arbitrate any disputes, including those disputes about the validity of the contract in general. Because the making of the arbitration agreement itself is rarely in issue when the parties have signed a contract containing an arbitration provision, the district court usually must compel arbitration immediately after one of the contractual parties so requests."

"The calculus changes when it is undisputed that the party seeking to avoid arbitration has not signed any contract requiring arbitration. In such a case, that party is challenging the very existence of any agreement, including the existence of an agreement to arbitrate. Under these circumstances, there is no presumptively valid general contract which would trigger the district court's duty to compel arbitration pursuant to the Act. If a party has not signed an agreement containing arbitration language, such a party may not have agreed to submit grievances to arbitration at all. Therefore, before sending any such grievances to arbitration, the district court itself must first decide whether or not the non-signing party can nonetheless be bound by the contractual language."

*Chastain,* 957 F.2d at 854 (citations and footnotes omitted). To sustain such a challenge, the party seeking to avoid arbitration must come forward with the following: first, "an unequivocal denial that the agreement has been made," *id.* (citation omitted), and, second, "some evidence ... to substantiate the denial." *Id.*

With regard to the first requirement, it is not enough to assert a simple "denial" that

---

**18.** Foster's brief in opposition to petition to compel arbitration, at 2.

**19.** *Id.*

the agreement was made. After all, as already explained, a denial based on fraud in the inducement as to the whole contract would not be sufficient to avoid arbitration. Therefore, an initial critical question is what type of denial is being advanced. Illustrations to §§ 163 and 164 of the Restatement (Second) of Contracts clarify the distinction between fraud in the factum, which, if true, results in a void contract (an issue which the court must resolve), and fraud in the inducement, which, if true, results in a voidable contract (an issue which the arbitrator must resolve):

> "A and B reach an understanding that they will execute a written contract containing terms on which they have agreed. It is properly prepared and is read by B, but A substitutes a writing containing essential terms that are different from those agreed upon and thereby induces B to sign it in the belief that it is the one he has read. B's apparent manifestation is not effective."

Restatement (Second) of Contracts, § 163, illustration 2. This type of contract is void in the factum, that is, is a void contract. The next section of the Restatement, "When a Misrepresentation Makes a contract Voidable," states "If a party's manifestation of assent is induced by either a fraudulent or a material misrepresentation by the other party upon which the recipient is justified in relying, the contract is voidable by the recipient." One of the illustrations to this section states:

> "A and B agree that A will buy a tract of land from B for $100,000 and will assume an existing mortgage of $50,000. In reducing the agreement to writing, A intentionally omits the provision for assumption but tells B that the writing correctly expresses their agreement. B does not notice the omission and is induced by A's statement to sign the writing. The misrepresenta-

tion is both fraudulent and material, and the contract is voidable by B."

§ 164, illustration 3.

■ Foster's allegations regarding the Orkin agent's representations are analogous to the illustration of § 164. Foster does not dispute that she signed a contract for extermination services. While the terms of the contract deviate from Foster's request to the company—to treat her home for roaches for only three months—the court does not find that the contract so greatly differs from Foster's expectations so as to nullify her assent to the contract, thus rendering it void. The contract is voidable, not void, and because "*Prima Paint* applies to 'voidable' contracts," *Three Valleys*, 925 F.2d at 1140, Foster must submit her claims to arbitration.

### 2.

■ Even if Foster's contention that the arbitration clause was fraudulently induced was sufficient to invoke this court's review, Foster has not followed through with actual facts to support the contention and thus revocation of the arbitration agreement. *See Rainbow Investments*, 973 F.Supp. at 1389–90 ("the court must be presented with evidentiary facts that tend to show the existence of grounds at law or in equity to support the revocation of the arbitration agreement."). A finding of fraud under Alabama law requires a claimant to establish the following elements: (1) a misrepresentation or suppression of a material fact; (2) made willfully to deceive, or recklessly without knowledge; (3) which was justifiably relied upon, under the circumstances; and (4) which caused damage as a proximate consequence. *See Harris v. M & S Toyota, Inc.*, 575 So.2d 74, 76 (Ala.1991); *Curtis v. Bill Byrd Automotive, Inc.*, 579 So.2d 590, 593–94 (Ala.1990).[20] While Foster has probably alleged facts sufficient to support a claim of fraudulent inducement concerning the contract as a whole, she has not done so with regard to the arbitration clause. The only allegation she makes

---

**20.** In *Foremost Ins. Co. v. Parham*, 693 So.2d 409, 421 (Ala.1997), the Alabama Supreme Court replaced the "justifiable reliance" standard with a "reasonable reliance" standard. Because the new standard is applicable only to those cases filed after March 14, 1997, and Foster filed her complaint on February 25, 1997, the court will evaluate Foster's claim under the justifiable reliance standard.

specific to the arbitration clause is that the clause was printed in small print on back of the contract she signed. However, the court finds that the print on both sides of the agreement is uniform in size, albeit the print on the back of the form—where the arbitration clause is located—is a lighter shade than the print on the front of the form. This distinction, without additional facts, is insufficient to support a claim of fraudulent inducement. Foster has not pointed to one statement made by the Orkin agent concerning the arbitration clause, much less her reliance on that statement, or even, as discussed later, the harm resulting from such a statement.

■ Further, arbitration clauses need not be specially marked or singled out in some way from the other provisions of the contract. *See Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 686–87, 116 S.Ct. 1652, 1656, 134 L.Ed.2d 902 (1996) ("By enacting § 2, we have several times said, Congress precluded States from singling out arbitration provisions for suspect status, requiring instead that such provisions be placed 'upon the same footing as other contracts.' ").

Therefore, in line with the Supreme Court's instruction that "any doubt concerning the scope of arbitrable issues should be resolved in favor of arbitration," *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 941–42, 74 L.Ed.2d 765 (1983), the court concludes that Foster's fraudulent inducement claim fails to invalidate the arbitration clause contained in the extermination contract.

### B.

Foster's second argument against enforcing the arbitration clause is that the arbitration clause is unconscionable. Like her fraudulent-inducement claim, Foster's unconscionability challenge speaks to the contract as a whole, as well as specifically to the arbitration clause. Nevertheless and assuming that Foster's challenge is sufficient to withstand *Prima Paint*, the court will examine Foster's unconscionability claim only as it relates to the arbitration clause. Whether the contract as a whole is unconscionable is an issue for the arbitrator to decide, should the court grant Rollins and Orkin's petition to compel arbitration.

As this court has noted in previous decisions, "Alabama statutory law empowers a trial court essentially to modify a consumer finance or credit contract, the provisions of which it finds as a matter of law to be unconscionable." *Roberson v. The Money Tree of Alabama, Inc.*, 954 F.Supp. 1519, 1524 (M.D.Ala.1997) (Thompson, J.); *see also Goodwin v. Ford Motor Credit Co.*, 970 F.Supp. 1007, 1012 (M.D.Ala.1997) (Thompson, J.). The Alabama Code provides that, "With respect to a consumer credit transaction, if the court as a matter of law finds the contract or any provision of the contract to have been unconscionable at the time it was made, the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable provision, or it may so limit the application of any unconscionable provision as to avoid any unconscionable result." 1975 Ala.Code § 5–19–16. In addition, the Alabama Supreme Court has recognized a finding that an arbitration clause is an unjust and unreasonable contract of adhesion might be grounds not to enforce that clause under the FAA. *See Ex parte Merrill Lynch, Pierce, Fenner & Smith*, 494 So.2d 1, 4 (Ala.1986).

■ Alabama law does not have an explicit standard for determining unconscionability. *See Roberson*, 954 F.Supp. at 1524, n.7 (discussing the "definitional haziness" in Alabama law and in the Uniform Commercial Code). Rather, Alabama courts use the following four factors to determine whether a contract or contract provision is unconscionable: (1) whether there is an absence of meaningful choice on one party's part; (2) whether the contractual terms are unreasonably favorable to one party; (3) whether there was unequal bargaining power among the parties; and (4) whether there were oppressive, one-sided, or patently unfair terms in the contract. *Layne v. Garner*, 612 So.2d 404, 408 (Ala.1992) (citing *Wilson v. World Omni Leasing, Inc.*, 540 So.2d 713, 717 (Ala.1989); *Lloyd v. Service Corp.*, 453 So.2d 735, 739 (Ala.1984); *Crestline Center v. Hinton*, 567 So.2d 393 (Ala.Civ.App.1990); *Advertiser Co. v. Electronic Engineers*, 527 So.2d 1317 (Ala. Civ.App.1988)). In addition, Alabama courts recognize that the rescission of a contract or portion of a contract "is an extraordinary

remedy usually reserved for the protection of the unsophisticated and uneducated." *Marshall v. Mercury Finance Co.,* 550 So.2d 1026, 1028 (Ala.Civ.App.1989) (quoting *E & W Building Material Co. v. American Savings & Loan Ass'n,* 648 F.Supp. 289, 291 (M.D.Ala.1986)).

■■■ Foster has argued that the arbitration clause is unconscionable because it is a contract of adhesion. In support of this argument, she notes her inability to understand the terms of the contract, the failure of the Orkin employee to explain the terms of the contract she was signing, and the placement of the arbitration clause on the back of the contract she signed. However, this court has rejected the argument that it *ipso facto* follows that a contract of adhesion is an unconscionable contract. *See Roberson,* 954 F.Supp. at 1526 n.10. Indeed, and more to the point, courts have expressly rejected the argument that an arbitration clause is automatically invalid if contained in a contract of adhesion. *See, e.g., Dillard v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 961 F.2d 1148, 1154–55 (5th Cir.1992) ("Adhesion contracts are not automatically void. Instead, the party seeking to avoid the contract generally must show that it is unconscionable."), *cert. denied,* 506 U.S. 1079, 113 S.Ct. 1046, 122 L.Ed.2d 355 (1993); *Adams v. Merrill Lynch Pierce Fenner & Smith,* 888 F.2d 696, 700 (10th Cir.1989) (finding brokerage agreements were not adhesion contracts, and even if they were, they were not unconscionable); *Coleman v. Prudential Bache Sec., Inc.,* 802 F.2d 1350, 1352 (11th Cir.1986) (absent showing of unfairness or oppression, fraud or mental incompetence, a person who signs a contract cannot avoid her obligations under it by showing that she did not read what she signed); *Roberson,* 954 F.Supp. at 1526 n.10 (an arbitration clause is not automatically invalid if contained in a contract of adhesion).

Rather, the court must limit its review to the terms of the clause itself and how those terms are unconscionable to the party seeking avoidance of the clause: "The precise question in this case ... is whether the arbitration clause is so unfavorable to [Foster] that it simply would not have been reasonable for [her] knowingly to accept it, given any meaningful choice," *Roberson,* 954 F.Supp. at 1525, and whether she "cannot obtain through arbitration the very same relief that would be otherwise available in a court action." *Id.* at 1526. This court also stated, "A party cannot rely on an abstract principle or theory of unfairness of a bargain to make a case for unconscionability; it must still be gauged by the actual circumstances of the case, and not in the abstract." *Goodwin,* 970 F.Supp. at 1013.

Foster's argument to show why the arbitration clause is unconscionable can be broken down into two main parts. First, she argues that she will lose important rights if the clause is enforced, including her right to appeal and her right to a jury trial. Second, she argues that the costs of pursuing her state-law claims in arbitration are excessive when compared to the costs of litigation, and that she cannot afford to arbitrate her claims. The court will address these arguments in turn.

1.

■■■ Foster states: "With full knowledge that Ms. Foster neither wanted nor could afford such [termite extermination] treatments, [petitioners] required Ms. Foster to execute a series of documents ... which waived her right to a jury trial, allowed [petitioners] to sue her in case of default, and precluded her from appealing any decision rendered on her claims." [21] In support of her first argument, that the arbitration clause is unconscionable because she has lost important rights, Foster cites *Northcom Ltd. v. James,* 694 So.2d 1329 (Ala.1997). In *Northcom,* the Alabama Supreme Court stated that because a party "waives his right to 'a remedy by due process of law [and] right of trial by jury' ... a waiver in an adhesion contract without a showing that it was voluntarily made might well be unconscionable." 694 So.2d at 1339 (citations omitted). And in *Allstar Homes, Inc. v. Waters,* —— So.2d ——, 1997 WL 723103 (Ala. Nov.21, 1997), that court recently reiterated its position. There, the court held that because "any arbitration agreement is a waiver of a party's right under Amendment VI of the United

---

**21.** Foster's brief in opposition to petition to compel arbitration, at 3.

States Constitution to a trial by jury and, regardless of the federal court's policy favoring arbitration, we find nothing in the FAA that would permit such a waiver unless it is made knowingly, willingly, and voluntarily." *Id.* at *6.

However, this court has previously rejected the *Northcom* court's conclusion on several different grounds, including its inconsistency with the policy articulated in the United States Supreme Court's decision *Allied–Bruce Terminix Cos., Inc. v. Dobson,* 513 U.S. 265, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995), that "state laws, whether legislative or judicially created, that single out arbitration agreements for disfavored treatment, are preempted by the FAA." *Goodwin,* 970 F.Supp. at 1014.[22] Rather, Foster must show that the arbitration clause itself is unconscionable, such that "the arbitrator cannot hear [her] claims against [Rollins or Orkin], or cannot award the full panoply of relief available in state courts under Alabama law." *Id.* at 1015.

In addition, Foster's argument goes to the adequacy of arbitration proceedings as compared to civil proceedings. This type of argument has been routinely rejected by federal courts as grounds for invalidating an arbitration clause. In comparing the two types of proceedings, the Supreme Court has stated, "by agreeing to arbitrate, a party 'trades the procedures and opportunities for review of the courtroom for the simplicity, informality, and expedition of arbitration.'" *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 31, 111 S.Ct. 1647, 1655, 114 L.Ed.2d 26 (1991) (citations omitted). As one court noted, "Unquestionably, the right to trial by jury is an important constitutional right, fundamental to the preservation of our system of individual rights and liberties. But the right, however significant, is not of such a nature that it cannot be knowingly and intelligently waived in favor of an arbitration process that places either party under an unreasonable burden or gives either party an unreasonable advantage." *Hurlbut v. Gantshar,* 674 F.Supp. 385, 392 (D.Mass.1987); *see also Pierson v. Dean, Witter, Reynolds, Inc.,* 742 F.2d 334, 339 (7th Cir.1984) (regarding the loss of the right to a jury trial the court stated, plaintiffs "cannot use their failure to inquire about the ramifications of that clause to avoid the consequences of agreed-to arbitration").

2.

The second argument Foster offers as to why the arbitration clause is unconscionable is that the costs associated with arbitration render the proceeding prohibitive to her. At first glance, this argument appears to contradict one of the rationales underlying the trend in favor of arbitration: that arbitration is more cost-effective than litigation. *See, e.g., Allied–Bruce Terminix,* 513 U.S. at 280, 115 S.Ct. at 842–43, ("Indeed, arbitration's advantages often would seem helpful to individuals, say, complaining about a product, who need a less expensive alternative to litigation.... 'The advantages of arbitration are many: it is usually cheaper and faster than litigation; it can have simpler procedural and evidentiary rules; it normally minimizes hostility and is less disruptive of ongoing and future business dealings among the parties; it is often more flexible in regard to scheduling of times and places of hearings and discovery devices....'") (citing H.R.Rep. No. 97–542, p. 13 (1982)); *Litigation, Arbitration or Mediation: A Dialogue,* 75 A.B.A. J. 70, 72 (1989) (noting the cost of two days of arbitration proceedings for a dispute worth $75,000 would be $20,000 as opposed to upwards of $50,000 in litigation costs). These

---

**22.** It is not clear whether Foster's contention that the agreement "allowed [petitioners] to sue her in case of default," is a contention that the agreement lacks a mutuality of remedy, as set out by the Alabama Supreme Court in *Northcom.* To the extent she is asserting a mutuality-of-remedy argument, Foster's contention fails. First, the arbitration clause in the agreement applies with equal force to Rollins, Orkin and Foster. The court cannot locate any language in the agreement that would permit Rollins and Orkin to resolve their claims against Foster in litigation, rather than arbitration. Second, as explained previously, this court has rejected the Alabama Supreme Court's requirement that agreements to arbitrate contain a mutuality of remedy as violating the policy articulated by the Supreme Court in *Allied–Bruce Terminix. Goodwin,* 970 F.Supp. at 1014; *see also Kelly v. UHC Management Co., Inc.,* 967 F.Supp. 1240, 1260 (N.D.Ala.1997) (finding that the Alabama Supreme Court's requirement of mutuality of obligation did not comport with § 2 of the FAA).

benefits, however, are not always transferable to disputes between a consumer and a more sophisticated business entity. *See* Joseph T. Mclaughlin, *Arbitrability: Current Trends in the United States,* 59 Alb.L.Rev. 905, 921–22 (1996) ("consumers, in contrast to more sophisticated contracting parties, may argue that they lack full information and sufficiently equal bargaining power."); *see also* Yvonne W. Rosmarin, *Consumers-R-Us: A Reality in the U.C.C. Article 2 Revision Process,* 35 Wm. & Mary L.Rev. 1593, 1616–17 (1994) (discussing the negative impact of arbitration clauses for consumer disputes); Paul D. Carrington and Paul H. Haagen, *Contract and Jurisdiction,* 1996 Sup.Ct.Rev. 331, 383–384 (arbitration, when compared to other litigation procedures such as small claims court, "is not in all circumstances more efficient" for resolving consumer disputes).

■ Here, Foster essentially contends that, because she cannot afford to pay for the costs of an arbitration proceeding, she will be left without a remedy if forced to arbitrate her claims. Foster's argument, if borne out by facts, has merit. When a party who is in such an inferior bargaining position, as was Foster, is compelled to assert her claims in arbitration, thus precluding a remedy in the less expensive public fora, and the costs of the arbitral forum render the party unable to pursue her claim, the clause is oppressive and one-sided and therefore unconscionable.

To reach the opposite conclusion would permit more sophisticated business entities, such as Rollins and Orkin, to circumvent not only judicial, but also arbitral proceedings, thereby fully insulating themselves from complaints brought by lower-income consumers. It is this chilling effect that, in part, prompted the Seventh Circuit to conclude that an employee seeking enforcement of so-called "statutory" rights in a compelled arbitration proceedings is not required to pay the arbitrators' fees: "[I]f an employee ... is required to pay arbitrators' fees ranging from $500 to $1000 per day *or more* ... in addition to administrative and attorney's fees, is it likely that he will be able to pursue his statutory claims? We think not." *Cole v. Burns Internat'l Sec. Servs.,* 105 F.3d 1465, 1484 (D.C.Cir.1997) (emphasis in original).[23] This comment applies with equal force to non-statutory claims.[24]

The Supreme Court's jurisprudence favoring arbitration as a means of dispute resolution is inapplicable to the instant case. The jurisprudence assumes as a matter of course that the aggrieved party can avail herself of the arbitral forum. It is therefore important to distinguish the type of argument Foster has advanced from the often-asserted, and more general, contention that arbitration fees are excessive. First, the arbitration clause produces a different result in each situation. In Foster's case, if the facts are as stated, she would be effectively locked out of any fora to resolve her dispute with Rollins and

**23.** Arguably, so as to fall within *Cole's* "statutory" reach, a consumer in Foster's position could seek a remedy under Alabama's Deceptive Trade Practices Act, 1975 Ala.Code §§ 8–19–1 to 8–19–15, which prohibits "engaging in ... [an] unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce," § 8–19–5(23), and provides a private right of action to collect up to three times any actual damages. § 8–19–10. Such a consumer might well be able to rely on the *Cole* court's reasoning to avoid arbitration or at least to avoid the payment of the arbitrator's fees.

**24.** At least one court has found that an inability to pay for the costs of arbitration is insufficient to invalidate an arbitration clause. *North Am. Van Lines v. Collyer,* 616 So.2d 177, 178 (Fla.Dist.Ct. App.1993). However, the *Collyer* court did not consider the issue from the perspective of whether the arbitration clause was unconscionable; rather, the court held that the trial court was in error when it used the plaintiff's inability to pay

as the "sole basis" for its determination that the defendants were not entitled to arbitration. *Id.* at 178. Judge Griffin's concurring opinion discusses the implications of the *Collyer* court's conclusion:

> "Assuming, *arguendo,* that the personal effects of the [plaintiffs] were lost by the bad faith and negligence of the appellants, they are without a remedy because they cannot afford the only available forum. By entering into the arbitration agreement, they contractually relinquished their right of access to the courts in favor of a private 'alternative dispute resolution' method which they cannot afford to access. It will not matter to a court that when the consumer signed the form agreement which included the arbitration clause, he or she was unaware of the front-end fee requirement in the AAA rules, or that these fees can be in the thousands of dollars ... Nor will it matter that the consumer is unable to pay the fee."

*Id.* at 180 (citations omitted).

Orkin; whereas, in the latter situation, the party may be responsible for more expenses, but can still access the forum. *See, e.g., Doctor's Associates, Inc. v. Stuart,* 85 F.3d 975, 980 (2d Cir.1996) (rejecting the contention that the costs of an arbitration proceeding render an arbitration agreement unconscionable when the defendants would have to win at arbitration in order to "break even."). As long as an avenue of relief remains available, the arbitration clause must be given full effect.[25] Second, the unconscionability analysis encompasses additional factors, such as the unequal bargaining position of the parties, their relative sophistication and education, and whether or not there was meaningful consent to the contract. *See Layne v. Garner,* 612 So.2d 404, 408 (Ala.1992).[26]

■ The factual question for this court is whether Foster has, in fact, been left without recourse in any forum because she cannot afford the costs of arbitration. Foster has failed to provide the necessary evidentiary material to support this conclusion.

Foster states that she is unable to afford the costs of arbitrating her claims and that the expenses of arbitration, which she notes as running to thousands of dollars each day, are prohibitive when compared to the $139.00 filing fee for a civil suit in state court.[27] These statements alone, however, are insufficient for the court to conclude that Foster has been left with no forum in which to pursue her claim. First, Foster has not presented a full picture of her financial condition such that the court could evaluate her ability to pay the costs of arbitration. Admittedly, Foster has been unemployed for the past 22 years. But she receives Social Security and disability benefits and owns the trailer home in which she resides, and the record does not indicate whether Foster has other sources of income or owns any other assets besides her trailer home.[28] Second, although the court can glean some information from the record about the arbitration filing fees for which she will be responsible,[29] there is no information

25. Of course, an arbitration filing fee may be so excessive that it can be considered unconscionable on its face. *See, e.g., Matter of Teleserve Sys., Inc. (MCI Telecommunications Corp.),* 230 A.D.2d 585, 659 N.Y.S.2d 659 (N.Y.App.Div. 1997) (finding arbitration filing fee of $204,000 unconscionable and against the public policy in favor of arbitration).

26. The court notes that its discussion is limited to the realm of contract law and whether or not the agreement to arbitrate is unconscionable. However, due-process and equal-protection arguments have been advanced by commentators on behalf of consumers in Foster's position. *See, e.g.,* Richard C. Reuben, *Public Justice: Toward a State Action Theory of ADR,* 85 Cal.L.Rev. 577 (1997). The Supreme Court has consistently recognized that in cases involving "fundamental rights," a state cannot deny indigent litigants access to its court systems without violating the due process and equal protection clauses of the fourteenth amendment. *See, e.g., M.L.B. v. S.L.J.,* 519 U.S. 102, 117 S.Ct. 555, 136 L.Ed.2d 473 (1996). There may therefore be limits to the applicability of the Supreme Court's equal-access cases to Foster's claim, which is typical of the "mine run of [civil] cases" that the Court has attempted to distinguish from those involving fundamental rights, like those "involving state controls or intrusions on family relationships," *id.* at ——, 117 S.Ct. at 563–564.

27. Foster's brief in opposition to petition to compel arbitration, at 4 ("How does an unemployed 44 year old mother of two, who lives on disability, go about arbitrating her claims.").

28. *Id.* at 5.

29. The rules promulgated by the American Arbitration Association (AAA), concerning the payment and responsibility of fees for mediation, state that the initial filing fee for mediation is $300, which is to be borne equally by the parties, unless otherwise provided. AAA Commercial Mediation Rules, at 13, attached to Petitioners' Reply Brief in Support of Petition to Compel Arbitration, as Exhibit 1. The Mediation Rules do not provide for waiver or reduction of administrative fees based on hardship or indigence. *Id.*

The filing fee for arbitration must be advanced by the party initiating the arbitration, although the fee may be apportioned by the arbitrator in the award. The arbitration filing fee for a claim above $50,000 and up to $100,000 is $1,250. The court has assumed because Foster did not contest Rollins and Orkin's assertion that this court has jurisdiction pursuant to 28 U.S.C.A. § 1332 that Foster's claim exceeds $75,000. Because the administration fee for mediation will be applied to the arbitration fee if the dispute is not resolved in mediation, Foster will only be responsible for paying $1,100.00.

In addition, an administrative hearing fee of $150 is levied against each party for each day of hearing before a single arbitrator. The parties are required to deposit the amount of money the AAA deems necessary to cover the cost of the arbitration in advance of any hearing. AAA Commercial Arbitration Rule 51. The Arbitration Rules do provide some relief for a party

in the record concerning the cost of the arbitrator's fees, which represents the crucial difference between arbitration and litigation—for, after all, a litigant in state or federal court is not accountable for the presiding judge's salary.[30] *See Cole,* 105 F.3d at 1484 ("Indeed, we are unaware of any situation in American jurisprudence in which a beneficiary of a federal statute has been required to pay for the services of the judge assigned to hear her or his case.").[31] Although Foster did not make any allegations regarding her ability to retain counsel during the arbitration proceedings, as opposed to litigation, these differences may also have had an impact on her claim. For example, if Foster could show that, because of the expense involved, no attorney would represent her during the arbitration proceeding, her contention of unconscionableness would be substantially bolstered. And more specifically, she has not shown that, because of the arbitration provision, no attorney is willing to take her case on a contingency basis, and, on that basis, assume the costs of arbitration. Without demonstrating any of the above facts, however, Foster has failed to show that she is effectively locked out from pursuing her state-law claims through arbitration.

Although the Supreme Court has stated that "courts should remain attuned to well-supported claims that the agreement to arbitrate resulted from the sort of fraud or overwhelming economic power that would provide the grounds 'for the revocation of any contract,'" *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 33, 111 S.Ct. 1647, 1656,

114 L.Ed.2d 26 (1991) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 627, 105 S.Ct. 3346, 3354, 87 L.Ed.2d 444 (1985)), the Court has also noted that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone,* 460 U.S. at 24–25, 103 S.Ct. at 941. While the costs associated with arbitration may, in certain circumstances, render an arbitration clause unconscionable, Foster has not sufficiently demonstrated that these circumstances exist so as to preclude arbitration of her claims.

## III. CONCLUSION

The court finds that the arbitration clause contained in the contract Rollins and Orkin has with Foster is valid and enforceable. Rollins and Orkin's petition to compel arbitration will therefore be granted, and an appropriate judgment will be entered.

---

unable to afford the administrative fees up front: the AAA "may, in the event of extreme hardship on the party of any party, defer or reduce the administrative fees." AAA Commercial Arbitration Rule 48. However, the rules do not contain any procedure for a claimant who seeks such a reduction, nor the criteria used to determine the extent of the reduction.

**30.** The average price for an arbitrator's fee is $700 per day. Kenneth May, *Labor Lawyers at ABA Session Debate Role of American Arbitration Association,* Daily Lab.Rep. (BNA) No. 31, at A–12 (Feb. 15, 1996) (cited in *Cole,* 105 F.3d at 1480 n.8).

**31.** For expedited arbitration procedures, the parties do not have to provide compensation to the arbitrator for the first day of the arbitration

proceedings. However the expedited procedures can only be used when claims are under $10,000. AAA Commercial Arbitration Rule 50. Thus, Foster will be responsible for one-half of the arbitrator's fees from the first day of arbitration in advance of the proceedings, even if she recovers nothing during the arbitration process.

Unlike the filing fees, the Arbitration Rules do not provide for a waiver of the costs associated with compensating the arbitrator. Nor do the Arbitration Rules provide for a claimant to proceed in forma pauperis, nor is there any mention in either the Mediation or Commercial Arbitration rules of a payment plan or schedule to assist claimants who are unable to pay the necessary fees in advance of the hearing. *See Cole,* 105 F.3d at 1484 ("There is no indication in AAA's rules that an arbitrator's fees may be reduced or waived in cases of financial hardship.").