## No. 16,290.

### AERO ENTERPRISES, INC. *v*. WALKER.
(228 P. [2d] 811)

Decided December 11, 1950.   Rehearing denied March 12, 1951.

Mr. F. W. HARDING, ONALEE BROWN, for plaintiff in error.

Mr. ROBERT L. McDOUGAL, Mr. P. C. KLINGSMITH, JR., for defendant in error.

*En Banc.*

MR. JUSTICE ALTER delivered the opinion of the court.

BERNARD WALKER brought an action against Aero Enterprises, Inc., to recover judgment in the sum of $2500.00 allegedly due him under the terms of a contract entered into between the parties on January 10, 1947. The jury returned a verdict in favor of plaintiff, and judgment was entered accordingly. Defendant brings the case here for review by writ of error.

In the complaint, filed November 22, 1947, it is alleged that on January 10, 1947, plaintiff entered into a written contract with defendant for the purchase of a Navion airplane at the stipulated price of $6100.00, and upon entering into the contract plaintiff deposited the sum of $2500.00. It is further alleged that the delivery date of the plane was to be determined by plaintiff, and, according to the terms of the contract, if the purchase price of the plane was increased before the date designated for its delivery by plaintiff, then plaintiff was to have the option of cancelling the contract and having his deposit refunded. Further it is alleged that on February 12, 1947, defendant notified plaintiff that the purchase price of the Navion plane had been increased, and thereupon, and within the time specified in the contract, plaintiff elected to cancel his contract of purchase and demanded the return of his deposit, with which demand defendant failed and refused to comply; hence this action. Attached to the complaint and made a part thereof was the contract and letter demanding the return of the deposit.

The material excerpts from the contract are:

No. 546

"Navion
Purchase Agreement
Date Jan. 10, 1947

Aero Enterprise Inc.
Denver, Colo.

Please enter my order for one NAvion Airplane with standard equipment and attachments (described herein), together with extra equipment listed below, to be delivered on or about........determined later........194........by purchaser.

Price of airplane _____$6100.00

\* \* \*

Payment: *A deposit of $2500.00 is made herewith,* receipt of which you hereby acknowledge. I agree to pay the balance on delivery *and accept delivery within 5 days after I have been notified that aircraft is ready.* In case I fail to take delivery in such time, *my deposit may be retained* in whole or in part as liquidated damages for your expense and efforts in the matter and you may dispose of the aircraft without any liability to me whatever.

\* \* \*

*Price changes:* The price quoted is for the specified delivery *and is subject to change without notice;* but if the price should be decreased before the aircraft has been delivered, then this agreement shall be construed as if the revised price were originally inserted herein. *If the price should be increased, then I may within 10 days after notice of such increase cancel this agreement and have my full deposit refunded;* otherwise I will complete the transaction at the increased price. The price quoted is also subject to any taxes in effect at the time of delivery. \* \* \* " (Emphasis supplied)

The letter is:

"Walker's Pontiac Company
Bernard Walker, Owner
Morrill, Nebr.

"Phone 54

Feb. 13, 1947.

"Aero Enterprises Inc       copy to North American Aviation
Denver, Colo.                          Inc Inglewood, California

Att Wm. M. Fisher

"Gentlemen:

"This letter confirms yesterdays telephone conversation concerning the price raise on the Navion airplane.

"In view of this price raise I am electing to take advantage of clause of our contract wherein upon written notice of a price increase within 10 days I may cancel my contract and have my deposit refunded.

"Therefore this letter cancels my agreement and you may refund the deposit on contract No. 546.

Yours truly
Bernard Walker"

In the answer to the complaint, filed March 12, 1948, defendant admits the execution of the contract hereinabove set forth, and, with reference to the deposit therein specified, alleges that the same was represented by a Luscombe plane owned by plaintiff and delivered to defendant as a "trade-in" on the purchase price of the Navion plane in the contract mentioned, and for no other purpose; denies that there was any notification by defendant to plaintiff of an increase in the purchase price of the plane mentioned in the contract; admits the receipt of the letter attached to the complaint purporting to cancel the contract of purchase; avers that it offered to return the "trade-in" plane to plaintiff, and denies that plaintiff is entitled to judgment, in the sum of $2500.00 together with interest and costs, or any sum.

The following facts are uncontraverted: The contract of January 10, 1947, was on a form used by defendant in the sale of its planes, and the blank spaces therein were filled in by defendant's sales agent, Mr. Fisher; it was

properly executed by the parties to this litigation; the $2500.00 deposited represented the agreed value of one Luscombe plane owned by plaintiff which, together with title thereto, was delivered to defendant upon the execution of the contract, and thereafter was used by defendant in connection with its business and for the training of students; that from January 10, 1947, to the date of the trial on January 24, 1949, the Luscombe plane remained in the possession of defendant and was insured by defendant as its property; that on February 12, 1947, Mr. Fisher telephoned plaintiff, advising him that there had been a price increase in Navion planes, at which time there was some discussion between Mr. Fisher and plaintiff as to plaintiff's exercise of his right of cancellation; that on February 14, 1947, after receipt of plaintiff's letter of date February 13, 1947, one of defendant's officials called plaintiff on the phone and discussed the letter of cancellation with him; that in the early part of March, 1947, Mr. Fisher and another of defendant's agents went to Morrill, Nebraska, to deliver a Navion plane to plaintiff, stating that the plane was the one for which plaintiff had contracted.

Defendant admitted that the fair market value of the Luscombe plane on January 10, 1947, was $2250.00.

Mr. Fisher testified that in the telephonic conversation of February 12, 1947, he advised plaintiff that the Navion plane for which plaintiff had contracted would not be increased in price, and this plaintiff denied; one of defendant's officers who telephoned plaintiff on February 14, 1947, testified that he advised plaintiff that if the contract was to be cancelled the Luscombe plane was ready for re-delivery to him, and he should come and get it. This statement plaintiff also denied.

The court, without objection thereto noted by defendant's counsel, interrogated the witness Fisher, and in response to questions he stated that the price of the Navion plane for which plaintiff contracted could have been increased by the company, but that he had assured

118

plaintiff, notwithstanding the provisions of the contract with reference to increase in price, that he might have the plane for the contract price, and when asked why it was that when he wrote the contract he did not strike therefrom the provisions with reference to increased prices, he stated that it was an oversight on his part. During this interrogation the witness was asked by counsel for plaintiff, "Q. *Why did you call him* [on February 12, 1947] *and tell him the price had gone up?* A. *I don't know, maybe I wanted to talk to him and tell him the price.*" (Emphasis supplied)

The court asked, with reference to the telephonic conversation of February 12, 1947, "The Court: *Were you going to hold on to this* [Navion plane] *at the old price until he wanted it?* A. *That was the negotiations we entered into.* Q. *Did you tell him that?* A. *I didn't tell him; I didn't know for sure.*" (Emphasis supplied)

Defendant's motion for dismissal, at the conclusion of plaintiff's evidence in chief, and its motion for directed verdict at the conclusion of all of the evidence, were overruled.

Defendant did not object to the instructions given by the court, and in them the jurors were told, in effect, that if they found and believed from a preponderance of the evidence that the evidence introduced on behalf of plaintiff was true, then their verdict should be for the plaintiff; otherwise for the defendant. The jury returned its verdict as hereinbefore stated.

There are two specifications of points, with subdivisions under each thereof. The general specifications are: 1. The insufficiency of the evidence to support the verdict, separated into two subdivisions; and 2. Errors of law in the trial of the action, stated under nine subdivisions.

■ 1. (a) It first is contended that the transaction between plaintiff and defendant did not constitute a sale of the Luscombe plane. It is admitted that defendant inquired as to any liens against the plane, received a bill

of sale therefor, and took delivery thereof; that it used the plane in its business and in training students, and insured the same in its name. It accepted the Luscombe plane at an agreed value of $2500.00 and acknowledged receipt of that sum as part payment on the Navion plane; admitted that on January 10, 1947, the cash market value of the Luscombe plane was $2250.00. Under these facts the sale was consummated, and defendant having acknowledged receipt of $2500.00, is not now in position to demand that plaintiff accept re-delivery of the Luscombe plane.

■ (b) It is contended that plaintiff was not notified, either orally or in writing, that the price of the Navion plane had been increased. Plaintiff's evidence, contradicted in part and corroborated in part by defendant's witnesses, presented a question of fact for determination by the jury. Especially is this true in view of the fact that defendant's explanation of the February 12, 1947, telephonic conversation with plaintiff may have been entirely disbelieved by the jury.

2. (a) and (b) The first two subdivisions of this specification are based upon alleged error in striking part of the testimony of one William Fisher, defendant's agent. The record reveals no motions to strike made or granted.

■ (c) It is contended that error was committed in permitting evidence as to the value of the Luscombe plane on January 10, 1947, and its present value. Defendant, as we have said, admitted that the fair market value of the Luscombe plane on January 10, 1947, was $2250.00, and, inasmuch as we have determined that plaintiff was not obligated to accept its return at that valuation, or any other sum, its value subsequent to January 10, 1947, was wholly immaterial; however, evidence thereof was not prejudicial.

■ (d) Exhibit D was a receipted invoice for the Luscombe plane, made at the time it was purchased by plaintiff, showing the price paid therefor to be $2995.00.

Defendant objected to the introduction of this exhibit in evidence, "because there is no other testimony to base this price on. There is the statement of the plaintiff in this case, and we have no knowledge except it is purely hearsay." Even though a proper objection to the introduction had been interposed, the admission of Exhibit D in evidence did not constitute prejudicial error.

(e) and (f) At the conclusion of plaintiff's case in, chief, defendant's counsel moved for dismissal on the ground that "the evidence of the plaintiff is insufficient to show that there was ever any price increase applied to the plane which the plaintiff had ordered." At the conclusion of all of the evidence, counsel for defendant interposed a motion for a directed verdict "for the reason that the contract * * * is too indefinite in time, to constitute a valid and binding contract." Both motions were overruled; the motion to dismiss because there was contradictory evidence for the jury's determination, and the motion for directed verdict because the contract was prepared by defendant and partly performed by plaintiff.

■ ■ (g) and (h) Under these subdivisions counsel for defendant contend that prejudicial error was committed by the court in interrogating the witness Fisher in such a manner, they contend, as to create a prejudice against defendant in the minds of the jurors.

While we recognize that the examination of a witness is the proper function of counsel, in rare instances and under exceptional conditions the trial judge, in the exercise of a sound discretion, may deem it proper to interrogate a witness for the purpose of clarifying a factual situation or to elicit the truth. The practice should not be encouraged, and only in exceptional instances exercised. If the trial judge is to exercise this discretionary right, it should be done in such a manner as not to unduly impress the jurors with the importance of the testimony or leave a definite impression in their minds that the trial judge was of the opinion that their verdict

should be favorable to one, and aganst the other, party litigant. In any event it is incumbent upon the unsuccessful party clearly to show prejudice to his rights by reason of the trial court's interrogation or to show an abuse of discretion prejudicial to his rights and interests. In the instant case, while we do not approve the interrogation of a witness by the trial court, nevertheless we do not find in the interrogation—and counsel has not pointed out to us—anything so prejudicial as to influence the minds of the jurors; nor do we find that the trial court's action was an abuse of its discretion.

The record and briefs have been carefully studied, and, as a conclusion therefrom we do not find that any prejudicial error was committed by the court.

The judgment, accordingly, is affirmed.

MR. JUSTICE MOORE does not participate.