169 So.2d 499 (1964)
BUMBY & STIMPSON, INC., Appellant,
v.
PENINSULA UTILITIES CORPORATION, Appellee.
No. 64-76.
District Court of Appeal of Florida. Third District.
December 8, 1964.
Julian K. Dominick, Orlando, for appellant.
Scott, McCarthy, Preston & Steel and Dwight Sullivan, Miami, for appellee.
Before CARROLL, HORTON and HENDRY, JJ.
CARROLL, Judge.
This is an appeal by the plaintiff below from an adverse judgment based on a directed verdict. An amended complaint alleged that by a written contract plaintiff agreed to construct for the defendant a sewage collection system; that because of difficulties encountered it became impossible to perform certain of the work according to the original plans and specifications and that the parties orally agreed on certain changes which resulted in an additional cost to the plaintiff of $76,201.78. Recovery was sought of that amount plus an unpaid balance under the written contract, making a total $123,074.04. The amended complaint was framed in two counts. The *500 first count declared on the contract.[1] The second count claimed the said sum of $123,074.04 on quantum meruit. The defendant's answer denied liability for the additional expense, and denied it was "agreed or contemplated directly or indirectly that defendant would pay any amounts to the plaintiff except as provided in the original contract between them."[2]
Apparently with the consent of counsel, the only issue submitted to the jury was as to liability of the defendant to pay the claim of $76,201.78, representing the added expense to the contractor upon using iron pipe rather than tile, etc. After the evidence was presented the trial judge granted defendant's motion for a directed verdict on that issue, and entered judgment for the defendant without prejudice to the plaintiff as to other amounts due under the contract. On this appeal from the judgment, the appellant contends first that it was error to direct the verdict for defendant.
The contract gave the plaintiff contractor the right to make tests to determine the physical conditions involved, and contained a recitation that the plaintiff contractor had done so.[3] It was made to appear that the tests plaintiff chose to make failed to reveal the existence of soft sand which rendered it difficult and impracticable to use *501 the dry ditch method planned for laying pipe. In certain of the areas involved the sewer pipe was to be laid below water level. The soft sand allowed flooding of the ditches. The water and the soft material which came into the ditches made it necessary to use divers to place and connect the pipe under water, and to substitute more costly cast iron pipe for the specified clay pipe. The result was increased expense in materials, labor and equipment.
When that condition became apparent the changes in method and material referred to above were suggested by the plaintiff contractor, and were consented to by defendant. There was, however, no discussion or agreement between the parties regarding any additional payment. Appellant's contention that the original contract was abandoned and that a new contract was made is not supported by the record, which shows the work proceeded under the contract to completion, subject only to the change in the nature of the pipe and the manner of its installation. On the facts disclosed the trial judge was eminently correct in concluding that the original written contract was effective and that the defendant was not obligated to pay more than the contract required.
It is the general rule that unexpected difficulty, expense or hardship involved in performance of a contract will not excuse the promisor from rendering due performance of his undertaking. Tampa v. Port Tampa, Fla.App. 1961, 127 So.2d 119; Simpson v. United States, 172 U.S. 372, 19 S.Ct. 222, 43 L.Ed. 482; Dermott v. Jones, 2 Wall. 1, 69 U.S., 1, 17 L.Ed. 762; Kennedy v. Reece, Cal. App., 37 Cal. Rptr. 708; Jung v. Gwin, 174 La. 111, 139 So. 774; Picard Constr. Co. v. Board of Comm'rs, 161 La. 1002, 109 So. 816; 12 Am.Jur., Contracts § 362; 6 Corbin, Contracts § 1333 (1962); Annot., 84 A.L.R.2d 12, 27 (1962). What occurred here was not impossibility of performance, as contended by appellant. The contractor could have protected itself against loss from the adverse conditions encountered, by predetermining their existence through other and more revealing tests or by an anticipatory protective provision in the contract. As stated in 6 Corbin on Contracts, supra, § 1333, p. 367:
"* * * So, one who contracts to make a foundation or a tunnel or other excavation usually investigates for himself the character of the location, whether it be sand or solid rock or swamp or frozen mixtures, before making his estimates and offers. Therefore, the risk is usually borne by the contractor; he is not discharged from duty by actually unexpected difficulty or expense, and he has no right to extra pay for completing the job. * * *"
A second contention made by the appellant was that the trial court "erred in usurping the plaintiff's counsel's presentation of plaintiff's witnesses." Extensive participation of the trial judge, such as by excessive questioning of witnesses, may amount to usurping the functions of counsel and be an abuse of the discretion and latitude of the court in such respects, with resultant injury to the rights of a party or parties. See, e.g., People v. Chenault, 74 Cal. App.2d 487, 169 P.2d 29, 34; Aero Enterprises, Inc. v. Walker, 123 Colo. 113, 228 P.2d 811, 815; Commonwealth v. Clairborne, 175 Pa.Super. 42, 102 A.2d 900, 904; 53 Am.Jur., Trial § 75; 28 R.C.L., Witnesses, § 180. In this case the claimed error, if any, was harmless because the principal facts which controlled the decision were not in dispute, and because any adverse effect thereof on the jury was eliminated by the direction of the verdict which relieved the jury of the need to decide the cause.
For the reasons stated, the judgment appealed from is affirmed.
Affirmed.
NOTES
[1] Material portions of the first count of the amended complaint included the following:

"5. That when the said impossibility of performance was discovered by the parties, they verbally agreed to change the manner of construction from the aforesaid written agreement, and the construction was completed according to the parties' subsequent oral agreement which provided for the substitution of cast iron pipe in lieu of clay pipe.
"6. That as the result of the aforesaid changes, the Plaintiff incurred additional expenses for materials, labor supplies and equipment in excess of $76,201.78 as is more particularly set out in the statement attached hereto marked Exhibit `B' and made a part hereof by reference.
"7. That pursuant to the aforesaid agreements, the Plaintiff constructed the aforesaid sewage collection system so that the same was accepted by the Defendant, and by reason thereof the Defendant became indebted to the Plaintiff in the sum of $271,088.29 as is more particularly set out in Exhibit `B'. The reasonable value of the said services performed and materials furnished by the Plaintiff was in excess of $271,088.29.
"8. That upon the aforesaid obligation the Defendant paid to the Plaintiff the sum of $148,014.25, leaving a balance due the Plaintiff from the Defendant by reason of the aforesaid obligation in the amount of $123.074.04."
[2] In the amended complaint it was stated there had been no agreement for a definite price with respect to the changes above referred to.
[3] The Instructions to Bidders, which accompanied and were made a part of the contract by reference, included the following:

"The bidder, by and through the submission of his bid, agrees that he shall be held responsible for having theretofore examined the site, the location and route of all proposed work and for having satisfied himself as to the character of the route, the location, surface and underground obstruction, the nature of the ground water-table conditions, and all other physical characteristics of the work, in order that he may include in the unit prices which he bid, all costs pertaining to the work and thereby provide for the satisfactory completion thereof, including the removal, re-location or replacement of any objects or obstructions which will be encountered in doing the proposed work."
The General Covenants and Conditions, which also were made a part of the contract by reference, included the following:
"It is understood and agreed that the Contractor has, by careful examination, satisfied himself as to the nature and location of the work, the conformation of the ground, the character, quality and quantity of the materials to be encountered, the character of equipment and facilities needed preliminary to and during the prosecution of the work, the general and local conditions, and all other matters which can in any way affect the work under this Contract. No verbal agreement or conversation with any officer, agent or employee of the Owner, either before or after the execution of this contract, shall affect or modify any of the terms or obligations herein contained."