# RESIDENTIAL CARPENTRY CORP. OF FLORIDA, INC., etc. v KISTER WOOD PRODUCTS, et al.

## Case No. 86-0303-Ca-01-WLB

Twentieth Judicial Circuit, Collier County

April 9, 1990

### APPEARANCES OF COUNSEL

**Daniel Gregory, Esquire,** for plaintiffs.

**Michael Volpe, Esquire,** for defendants.

### OPINION OF THE COURT

WILLIAM L. BLACKWELL, Circuit Judge.

### *FINAL JUDGMENT*

This case was tried for six days to the Court as fact-finder. Residential Carpentry Corporation of Florida, Inc. (Residential) contracted with Defendant, Kister Wood Products, Inc. (Kister) to install in the

Ritz-Carlton Hotel in Naples, Florida most of the finished woodwork and millwork which Kister had contracted to provide Metric Constructors, Inc. (Metric), the general contractor on this construction project. Residential sued Kister contending Kister unreasonably delayed performance and inadequately performed its obligations under Kister's contracts with Metric and Residential, thereby damaging Residential in its attempts to timely do what was required of it under these contracts. The Court finds for the Plaintiff, Residential, on its claims against Kister; and also finds for Residential on the counterclaim of Kister.

Residential also sued Ohio Farmers Insurance Company (Kister's surety), Metric, and the owner of the Ritz-Carlton. The claims involving Metric and the hotel owner were settled before trial.

## I FINDINGS OF FACT

From the greater weight of the credible evidence the Court finds the following operative facts. The Ritz-Carlton Hotel construction project in Naples was a "fast-track" project (meaning the various sub-contractors involved, the general contractor, and the owner agreed to a rapid construction schedule, the ultimate goal being the opening of the hotel on December 5, 1985). Construction was begun in the Spring of 1984. The owner and general contractor never deviated from this target opening in spite of various problems, including an unexpected brush with a minor hurricane in the late summer of 1985.

Kister's contract with Metric (Plaintiff's Exhibit 1) called for the supplying and installation of wood paneling, stairways, doors, various trim, and other custom-made wood and glass products (referred to by these trades as "millwork"). The price was $1,568,647.00. This was revised upward in two later change orders to $2,019,352.00. Kister subcontracted the installation work to Residential for $302,000.00 plus the cost of a performance and payment bond. The Kister-Residential contract (Plaintiff's Exhibit 2) is a simple two page document in which the parties agreed Residential would be bound to Kister as Kister was bound to Metric and to the owner, as provided in the Metric-Kister contract. Notably, both contracts contained "time is of the essence" provisions (paragraph 6, Plaintiff's Exhibit 1 and center paragraph, page 2, Plaintiff's Exhibit 2).

While these contracts contained no specific schedules of delivery and installation of the millwork, the parties had many discussions about scheduling and exchanged correspondence on this subject. These parties, as well as other sub-contractors involved in the project, seemingly understood and accepted the importance of timely delivery and installation of the various components of the project; the performance of one

**187**

was often a prerequisite or co-requisite to the performance of another. Regarding scheduling, two material letters appear in Plaintiff's Composite Exhibit 3 - the February 15, 1985 letter from Kister's Jerry Bradley to Metric's Neal Fleshour and the July 11, 1985 letter from Kister's Herbert Newton to Metric's Paul Daniels. These letters contained dates referencing delivery and installation.

The essence of Residential's claims is that Kister delayed deliveries; sent incomplete, poorly marked or unmarked materials; sent non-conforming and non-matched materials; and that as a result of these errors, Residential's performance of its obligations was delayed, impeded, and, ultimately, accelerated into the last few months prior to the hotel's opening (Plaintiff's expert on millwork installation called this "compression")—all of which added to the Plaintiff's costs of performance.

Kister contends its delivery problems were occasioned by the failure of Metric to implement and transmit design changes and information quickly and accurately enough for Kister to act upon; and says that Residential's workmen were unskilled in doing a job of this quality and magnitude; and says they mishandled the millwork; and that the hotel owner, Metric, and Residential were all variously responsible for delivery and quality control problems. Kister's and Residential's claims against Metric and owner were settled before trial. Kister also emphasizes paragraph 7 of the Metric-Kister contract which is a provision for a request for additional time when delays occur; and which also provides that an extension of time is subcontractor's sole remedy for delay. Kister argues this provision precludes Residential's right to recover damages.

The parties agree that numerous problems with the wood were caused by high humidity (the hotel is at the edge of the Gulf of Mexico) and the failure of Metric to get the building closed and air-conditioned before the millwork went into the building. The brush with the hurricane in late summer also occurred before the closure of the building. This undoubtedly accounts for much of what Kister's witnesses described as poor workmanship by Residential. Most of the experts and other witnesses agreed that high humidity or significant humidity changes caused expansion/contraction in the wood which caused poor-appearing joints and open joints which required filling and painting. The Court is unable to attribute these problems to a specific cause in the light of all of the evidence.

The Court is convinced that Kister failed in a material way to timely and properly do what was required of it under the two contracts; and

188

that this failure resulted in significant monetary losses to Residential which should be compensated.

The Court is also convinced that Residential underbid the job significantly. Mr. Shitama, Plaintiff's expert, testified the Plaintiff's bid was 20-25% too low in terms of manpower estimates for the job. Kister's experts testified that Residential's bid was $361,000 or $384,-000 too low. The Court feels that Residential should not be compensated for its losses attributable to underbidding the job.

Both Kister and Residential have settled their claims with Metric and the Owner, who, no doubt, occasioned some of the losses complained of by these parties. The amounts of these losses are not ascertainable and the Court can only conclude they were fairly liquidated by those settlements. The Court feels these litigants are still trying to exact from each other some losses which were self-inflicted and some which should be laid at the feet of others—and which have probably already been compensated to some extent by virtue of these settlements.

## II CONCLUSIONS OF LAW

Kister's reliance on the "no damages for delay" provision in the Metric—Kister contract (paragraph 7), adopted in the Kister—Residential contract, is misplaced under the foregoing findings of fact. Kister's inattention to the delivery schedules referenced in the letters in Plaintiff's Exhibit 3 impacted the performance of Residential in a significant, negative way. Kister cannot shift its responsibilities to others so easily in order to escape liability. See *Bumby & Stimpson v Peninsula Utilities Corp.,* 169 So.2d 499, 502 (3d DCA 1964); *S. Leo Harmonway, Inc. v Binks Mfg Co.,* 597 F. Supp. 1014, 1028 (S.D.N.Y. 1984).

Kister argues cases from other jurisdictions on the "no damages for delay" provision. However, three cases from Florida speak sufficiently to the issue. These will be discussed in chronological order. In *Southern Gulf Utilities v Boca Ciega Sanitary DIst.,* 238 So.2d 458 (2d DCA 1970), the Court discussed the issue historically, pointing out that a willful failure to perform would circumvent the "no damages" clause. Id. at 459. The Court observed that the issue of negligence in performing a contractual duty presented a closer question as to the validity of the clause:

> The question on simple negligence is closer, and in formulating a workable rule we must bear in mind that the delay can result from either a knowing or an ignorant failure. Neither party can rely unreasonably on the no-damages clause.

We hold that this complaint states a cause of action for damages

**189**

caused by the knowing delay of the public authority which transcends mere lethargy or bureaucratic bungling. p. 459.

*McIntire v Green-Tree Communities,* 318 So.2d 197 (2d DCA 1975) upheld dismissal of one count of a suit because of a "no damages for delay" provision in an agreement at the core of the controversy. This court summarized the law and pointed out that the *Southern Gulf Utilities* case involved "knowing delay" which obviates the "no damages for delay" clause. *McIntire* at 199.

Kister cites *C. A. Davis, Inc. v City of Miami,* 400 So.2d 536 (3d DCA 1981) as authority for the proposition that Florida law avoids liability under a "no damages for delay" clause. However, the pertinent part of the opinion says:

The law in Florida is that so long as a public authority does not *willfully* or *knowingly* delay job progress it will avoid liability under a "no damage for delay clause". (emphasis supplied) at p. 539

The *C. A. Davis Inc.* case went on to simply hold that there could be no damage claim presented to the jury where there was no evidence presented showing any specific delay by City of Miami. At p. 539.

There was ample evidence in this case that Kister's inattention to delivery and other errors transcended mere lethargy or simple inattention to its commitments.

Residential relied on a "total cost formula" approach to its proof of damages. This approach is appropriate to measure damages in a breach of construction contract case when there is no other practical means of measuring damages. *Department of Transportation v Hawkins Bridge Company,* 457 So.2d 525 (1st DCA 1984). This approach neither warrants nor necessarily results in an award of the total damages claimed. However, that does not impair its utility as an approach to the damages issue in this case.

It is accordingly ADJUDGED that:

1. Residential Carpentry Corporation of Florida, Inc. takes judgment against Kister Wood Products, Inc. and its surety, Ohio Farmers Insurance Company, for damages in the net amount of $181,832.25.

2. Kister Wood Products, Inc. takes nothing in its claim against Residential Carpentry Corporation of Florida, Inc.

3. Jurisdiction is reserved to consider and determine awards of attorneys fees, costs, and interest.

190

**DONE AND ORDERED** in Chambers this 9th day of April, 1990.