# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>               Respondent,<br><br>     v.<br><br>JESSIE D. BRITAIN,<br><br>               Appellant. | No.  46616-3-II<br><br>UNPUBLISHED OPINION |

BJORGEN, C.J. — Jessie Dean Britain appeals his conviction for attempting to elude police and a sentencing enhancement for recklessly endangering others.  He argues that the trial court erred by (1) allowing improper opinion testimony, (2) admitting evidence of outstanding warrants under ER 404(b), and (3) improperly instructing the jury regarding the verdict forms and its duty to unanimously agree on the conduct supporting a guilty verdict.  He also argues (4) that his trial was tainted by prosecutorial misconduct because the State (a) elicited improper opinion testimony and (b) misstated relevant law during closing argument, and (5) that he received ineffective assistance of counsel because his attorney failed to object to (a) the opinion testimony, (b) the testimony regarding his post-arrest silence, (c) the trial court's improper jury

instruction, and (d) the prosecutor's alleged misstatement of law. Finally, Britain argues that (6) the cumulative effect of all these errors deprived him of a fair trial.

We hold that (1) the witnesses did not improperly testify, (2) the trial court properly admitted evidence of the warrants under ER 404(b), (3) the trial court did not commit prejudicial instructional error, (4) Britain has not shown prejudicial misconduct by the prosecutor, (5) Britain had not shown that his counsel was ineffective, and (6) Britain suffered no prejudice from any accumulation of errors. Accordingly, we affirm Britain's conviction and sentence.

FACTS

On May 10, 2014, two Pierce County Sheriff's deputies, Chad Helligso and Chris Olson, were on patrol in Tacoma. They encountered a pickup truck driven by Britain and noticed one of its brake lights was out. They began to follow Britain, but Britain accelerated and traveled at high speed down a residential street. The deputies turned on their lights and siren and followed Britain. Britain abruptly turned onto another street, hitting the curb, and then drove down the middle of the street. Britain slowed his truck to about five m.p.h., then jumped out of the truck and took off running. Britain's truck rolled until it hit a mailbox. RP at 87. The deputies exited their car and followed Britain on foot, ultimately catching him and taking him into custody.

The deputies saw a passenger, Ronnie Prim, trying to exit the truck through a window in the canopy. Prim appeared to have been sitting in the back of the truck, where there were no seats or security restraints. The deputies discovered an outstanding warrant for Prim's arrest and took him into custody.

No. 46616-3-II

The State charged Britain with attempting to elude a pursuing police vehicle, with a special allegation for endangering others[1]; unlawful possession of a controlled substance—methamphetamine; and first degree driving with a suspended or revoked license. Britain pled guilty to the latter two charges, so the case proceeded to trial on the attempted eluding charge alone.

Before trial began, Britain moved to suppress evidence that he was the subject of outstanding arrest warrants at the time of the incident. Britain argued that evidence of the warrants was improper propensity evidence inadmissible under ER 404. The trial court analyzed the merits of the argument on the record and ultimately ruled that evidence of the warrants would be admissible as motive evidence, but that the State could not introduce evidence regarding the crimes for which the warrants were issued.

Both deputies testified at trial. Among the topics they covered were Britain's manner of driving and its potential for endangering a passenger; the charges the deputies recommended to the prosecutor; and common signs that a driver is trying to elude a pursuing police vehicle. When Britain's attorney asked Deputy Helligso whether Britain was aware of the outstanding arrest warrants, Deputy Helligso responded that Britain did not answer any questions.

At the conclusion of trial, the State and Britain filed proposed jury instructions with the court. The State's included instructions for the second and third charges, to which Britain had pled guilty and which were not tried to the jury. The trial court did not give the jury the State's proposed instructions specifically relating to the second and third charges, but did give an instruction referring to three verdict forms. Neither the State nor Britain objected to the

_____
[1] RCW 9.94A.834.

3

instructions. However, before reading the erroneous instruction to the jury, the State alerted the trial court to the error and the trial court distributed a manually corrected version of the jury instruction.

The prosecutor argued in closing that Britain had attempted to elude the deputies in order to avoid arrest, and endangered Prim, an unsecured passenger, by driving recklessly and jumping from the truck without parking it. Britain did not object to any part of the prosecutor's closing argument.

The jury found Britain guilty of attempting to elude a pursuing police vehicle and also found that during the attempt he had endangered a person other than himself and the pursuing deputies. Britain appeals the resulting conviction and enhanced sentence.

ANALYSIS

Britain assigns error to several actions of the trial court, the State, and his defense attorney, arguing primarily within the framework of prosecutorial misconduct and ineffective assistance of counsel. We address the arguments regarding the trial court's errors first, then address the prosecutorial misconduct and ineffective assistance claims, which incorporate the preceding analyses of the underlying errors.

I. IMPROPER OPINION TESTIMONY

Britain argues that the trial court erred by allowing law enforcement officers to give improper opinion testimony. Britain failed to preserve this issue for review by objecting in the trial court. However, because the issue affects other arguments not subject to waiver, we address the issue and hold that the testimony was not improper.

4

No. 46616-3-II

1.    Waiver

Under RAP 2.5(a), a defendant generally may not raise an error for the first time on appeal unless it is a manifest constitutional error. *State v. Kirkman*, 159 Wn.2d 918, 926, 155 P.3d 125 (2007). A trial court commits constitutional error by allowing improper opinion testimony, but such an error is not manifest from the appellate record if the jury was properly instructed that it alone must determine the facts and credibility of witnesses. *State v. Montgomery*, 163 Wn.2d 577, 595, 183 P.3d 267 (2008); *Kirkman*, 159 Wn.2d at 937. Here, the jury was so instructed. Therefore, Britain waived his right to challenge Deputy Helligso's testimony by failing to object to that testimony.

2.    Merits

We exercise our discretion to address Britain's challenge on the merits, because its resolution affects that of other issues. Britain argues that the trial court erred by allowing both Deputy Helligso and Deputy Olson to give improper opinion testimony. We disagree.

A lay witness may offer opinion testimony if helpful to the jury and not informed by special expertise. ER 701. However, opinion testimony as to a criminal defendant's guilt "'invades the exclusive province of the jury'" to decide the facts of the case. *State v. Demery*, 144 Wn.2d 753, 759, 30 P.3d 1278 (2001) (quoting *City of Seattle v. Heatley*, 70 Wn. App. 573, 577, 854 P.2d 658 (1993)). To determine whether opinion testimony is impermissible, courts consider five *Demery* factors: "'(1) the type of witness involved, (2) the specific nature of the testimony, (3) the nature of the charges, (4) the type of defense, and (5) the other evidence before the trier of fact.'" *Montgomery*, 163 Wn.2d at 591 (quoting *Demery*, 144 Wn.2d at 759).

a. Deputy Helligso's testimony

Britain points to two portions of Deputy Helligso's testimony as conveying an improper opinion to the jury. First, he argues that Deputy Helligso opined that Britain had endangered Prim, and therefore that he was guilty of the charged aggravating condition. The exchange at issue occurred during the State's direct examination:

> Q. And based off of what you observed of Mr. Britain's driving, did you have any concerns in retrospect about any possible harm that could have been caused to Mr. Prim based off of Mr. Britain's driving?
>
> A. Yes. There was no seat whatsoever back there [in the back of the truck]. The back end of the truck had a lot of garbage type stuff in it and there was no seatbelt in the back of the truck.
>
> Q. And *was there anything*, specifically during your search, you testified to several instances where you had safety concerns, specific instances during the pursuit *that possibly could have endangered Mr. Prim* as a passenger?
>
> A. *Yes*.
>
> Q. And what were those?
>
> A. The high-speed turns, could have been ejected out the side windows. The quick acceleration could have caused him to roll towards the back and come out the back end.

Report of Proceedings (RP) at 41-42 (emphasis added). In this exchange Deputy Helligso is describing the various possible dangers Britain's driving posed to Prim.

As a law enforcement officer, Deputy Helligso's testimony had "a special aura of reliability." *Kirkman*, 159 Wn.2d at 928. An opinion by the deputy that the conditions he described in fact endangered Prim may have been improper opinion testimony as to Britain's guilt. *See* RCW 9.94A.834(2) (requiring a finding that "one or more persons other than the defendant or the pursuing law enforcement officer *were endangered* [during] the commission of

the crime." (Emphasis added.) However, Deputy Helligso did not offer such an opinion. Instead, he opined only that the conditions "possibly could have endangered" Prim, i.e., that the conditions were dangerous to a person in Prim's situation. RP at 41. This testimony constituted the primary evidence of the dangerous conditions, directly challenging Britain's defense denying that Prim was in any real danger. Therefore, the bulk of the *Demery* factors weigh toward admissibility. This testimony did not invade the province of the jury and was admissible.

The second portion of Deputy Helligso's testimony that Britain claims was improper related to the underlying charge that Britain eluded police. During cross examination, Britain's attorney questioned Deputy Helligso about the charging recommendation he made to the prosecutor, noting that he did not recommend a reckless driving charge. On redirect, Deputy Helligso testified that he recommended in his police report that the prosecutor charge Britain with "eluding police," which he later clarified referred to "[f]elony elude." RP at 56. As the State notes, this was not truly opinion testimony; Deputy Helligso was merely describing his charging recommendation. At no point did Deputy Helligso opine that he believed Britain was in fact guilty of that charged crime. Therefore, Deputy Helligso did not offer improper opinion testimony on the matter.

b. Deputy Olson's Testimony

Britain argues that Deputy Olson also gave improper opinion testimony by describing the conditions that would usually lead him to pursue a driver for eluding. During the State's direct examination, Deputy Olson offered the following testimony:

Q. [W]hat are the conditions that might trigger something that starts out perhaps as a stop for a traffic infraction into a pursuit, for somebody eluding you?

A. When you activate your overhead lights and the vehicle doesn't stop and then you activate your siren and the vehicle continues to go straightforward and not stop.

RP at 77. According to Britain, this constituted an opinion that he was guilty of attempting to elude police because the conditions mirrored those of Britain's case. However, Deputy Olson merely described *generally* the conditions that would lead him to pursue a driver for eluding police. He offered no opinion as to Britain's guilt.

Britain's arguments regarding improper opinion testimony fail. The trial court did not err in admitting the challenged testimony by Deputy Helligso or Deputy Olson.

## II. ER 404(B) VIOLATION

Britain argues that the trial court violated ER 404(b) by allowing the deputies to testify that Britain had warrants out for his arrest at the time they encountered him. The State argues that this testimony was relevant to show Britain's motive for attempting to elude police and that the trial court properly allowed the testimony for that limited purpose. The State is correct.

Under ER 404(b), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." However, this evidence may be admissible "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." ER 404(b). Before a trial court admits evidence under ER 404(b), it must (1) find by a preponderance of the evidence that the misconduct occurred, (2) identify the purpose for admitting the evidence, (3) determine the relevance of the evidence to prove an element of the crime, and (4) weigh the probative value

8

of the evidence against its prejudicial effect under ER 403. *State v. Gunderson*, 181 Wn.2d 916, 923, 337 P.3d 1090 (2014).

We review the trial court's decision for an abuse of discretion. *State v. Fisher*, 165 Wn.2d 727, 745, 202 P.3d 937 (2009). A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds. *State v. Hassan*, 184 Wn. App. 140, 151, 336 P.3d 99 (2014).

Here, the trial court admitted evidence of the warrants on the condition that the evidence not divulge the reasons for their issuance. The trial court justified this ruling by touching on each of the necessary factors:

> [The proposed evidence] is evidence that there was an outstanding warrant. That, indeed, would be evidence relevant on the issue of why he would flee, and a motive for fleeing. That's relevant evidence. It's prejudicial. Any evidence is generally prejudicial, but its probative value outweighs any unfair prejudicial effect, and so evidence of the outstanding warrants are admissible.

RP at 73. The trial court recognized the undisputed fact that the warrants were outstanding at the time of Britain's flight, explained that evidence of the warrants was relevant to show Britain's motive for attempting to elude police and therefore admissible for that purpose, and weighed the warrants' probative value against their potential for undue prejudice.

Britain argues that the trial court erred in finding that the warrants were sufficiently probative, because the State was not required to prove Britain's motive and presented no evidence that Britain was aware of the warrants. However, the State was required to prove, inter alia, that Britain willfully failed to stop when the pursuing deputies signaled him. RCW 46.61.024(1). Evidence that he had a motive to resist contact with police was highly probative of Britain's willfulness in failing to stop. Evidence of the warrants, even without further evidence

9

that Britain was aware of them, allowed the jury reasonably to infer that Britain was afraid to stop the vehicle because he believed he would be arrested for a reason unrelated to the traffic stop.

The trial court properly recognized that this high probative value outweighed the potential for the evidence to unduly prejudice Britain. The potential prejudice from evidence of the warrants lay in the inference that Britain had a propensity for lawlessness. However, the trial court limited the potency of the inference by barring evidence of the underlying crimes. The court's circumspect approach of allowing important evidence while confining any bias from it was not, on these facts, an abuse of discretion.

### III. INSTRUCTIONAL ERROR

Britain argues that the trial court erred by (1) giving jury instructions on charges to which Britain had already pled guilty and (2) failing to give the jury a unanimity instruction. We disagree.

1.      Instruction Referring to Counts Not Before the Jury

Britain argues that the trial court erred by giving the jury instructions referring to charges not before it. Jury instructions must allow counsel to argue their theory of the case and properly inform the jury of the applicable law, and may not be misleading. *State v. Aguirre*, 168 Wn.2d 350, 363-64, 229 P.3d 669 (2010). However, even if an instruction is misleading, it is not reversible error unless the complaining party shows that it was prejudicial. *Id*. at 364. Such a nonconstitutional error is prejudicial only if "'within reasonable probabilities, had the error not occurred, the outcome of the trial would have been materially affected.'" *State v. Barry*, 183

Wn.2d 297, 303, 352 P.3d 161 (2015) (quoting *State v. Smith*, 106 Wn.2d 772, 780, 725 P.2d 951 (1986)).

Here, the trial court did not give the jury the State's proposed instructions specifically relating to the charges not before it, but did give an instruction referring to three verdict forms and asked the jury to complete each verdict form. The instructions thereby initially misled the jury as to the number of verdict forms it would be required to complete and return. However, the trial court recognized its mistake, apparently after counsel mentioned the problem, before reading the instructions aloud to the jury. The trial court then corrected the erroneous instruction by making manual edits to the printed text, under which the original text could still be seen, and distributed corrected versions of the instruction. These edits made clear there was only one verdict form, but showed the original errors referring to three forms underneath.

Britain contends that the original instruction informed jurors about the additional charges Britain faced. However, the instruction referred only to the number of verdict forms the jury was to complete and did not refer to any additional charges or underlying crimes. The jury was aware only that the trial court had given it an instruction containing a clerical error, which the trial court had corrected. The jury could not have divined Britain's other charges from the original or corrected text. Nothing in the record suggests that the jury's verdict was materially affected by the error. With that, Britain cannot show that he was prejudiced by the error, and reversal is not warranted.

2.      Unanimity Instruction

Britain argues that the trial court erred by failing to instruct the jury that it must unanimously agree on the conduct underlying Britain's conviction and sentencing enhancement.

We disagree. No such instruction was necessary, because Britain engaged in a continuing course of conduct.

Where the State alleges multiple acts that could lead to conviction, the jury may convict only if it unanimously agrees on the particular conduct underlying the conviction. *State v. Locke*, 175 Wn. App. 779, 802, 307 P.3d 771 (2013), *review denied*, 179 Wn.2d 1021 (2014). In such a case, the trial court must instruct the jury regarding this requirement. *Id.* However, where the defendant's course of conduct is continuing—"'an ongoing enterprise with a single objective'"— no such instruction is needed because the jury is not tasked with considering multiple acts. *Id.* at 803 (quoting *State v. Love*, 80 Wn. App. 357, 361, 908 P.2d 395 (1996)). We review de novo whether a unanimity instruction was necessary. *State v. Boyd*, 137 Wn. App. 910, 922, 155 P.3d 188 (2007).

Britain's conduct was an ongoing enterprise with a single objective. His actions were all part of his attempt to elude pursuing law enforcement officers. In deciding whether to find the sentencing enhancement, the jury was charged with finding whether one or more persons other than Britain and the pursuing officers were endangered by that continuing course of conduct. RCW 9.94A.834(2). They were not charged with identifying any particular endangered persons, and the statute requires no such finding. Similarly, the statute requires no finding as to the specific means of endangerment; the jury must only determine whether "the accused committed the crime while endangering" somebody. RCW 9.94A.834(2). The jury was properly instructed to decide whether Britain's continuing course of conduct endangered "any person." Clerk's Papers at 111. No specific unanimity instruction was necessary.

IV. PROSECUTORIAL MISCONDUCT

Britain argues that the State committed prosecutorial misconduct (1) by eliciting improper opinion testimony from Deputy Helligso and Deputy Olson and (2) by misstating the law in closing argument. We disagree.

To prevail on a claim of prosecutorial misconduct, a defendant must show that in the context of the record and all of the circumstances of the trial, the prosecutor's conduct was both improper and prejudicial. *State v. Thorgerson*, 172 Wn.2d 438, 442, 258 P.3d 43 (2011). We examine the prosecutor's conduct and whether prejudice resulted therefrom by considering the evidence presented, the context of the total argument, the issues in the case, the evidence addressed in the argument, and the instructions given to the jury. *State v. Monday*, 171 Wn.2d 667, 675, 257 P.3d 551 (2011). Misconduct is prejudicial if there is a substantial likelihood it affected the verdict. *State v. Emery*, 174 Wn.2d 741, 760, 278 P.3d 653 (2012).

1.      Eliciting Improper Opinion Testimony

Britain argues that the State committed prosecutorial misconduct by eliciting improper opinion testimony from Deputy Helligso and Deputy Olson. We disagree.

As discussed in section I supra, neither deputy gave improper opinion testimony. Britain does not argue that the State's particular manner of questioning constituted independent misconduct, and points to no prejudicial effect apart from eliciting the testimony. Therefore, we hold the State committed no misconduct on this basis.

2.      Misstatement of the Law

Britain argues that the prosecutor prejudicially misstated the law during closing argument by suggesting that the jury could find endangerment if it believed that Britain's actions

endangered unknown persons. We disagree. The prosecutor may not have misstated the law, and regardless Britain has not established prejudice in light of his failure to object.

In stating the relevant law to the jury, a prosecutor may not stray beyond the boundaries of the jury's instructions. *State v. Walker*, 164 Wn. App. 724, 736, 265 P.3d 191 (2011). A prosecutor who misstates the law commits a "serious irregularity" with "grave potential to mislead the jury." *Id*.

RCW 9.94A.834 provides:

(1) The prosecuting attorney may file a special allegation of endangerment by eluding in every criminal case involving a charge of attempting to elude a police vehicle under RCW 46.61.024, when sufficient admissible evidence exists, to show that *one or more persons other than the defendant or the pursuing law enforcement officer were threatened with physical injury or harm* by the actions of the person committing the crime of attempting to elude a police vehicle.

(2) In a criminal case in which there has been a special allegation, the state shall prove beyond a reasonable doubt that the accused committed the crime while endangering one or more persons other than the defendant or pursuing law enforcement officer. The court shall make a finding of fact of whether or not one or more persons other than the defendant or the pursuing law enforcement officer were endangered at the time of the commission of the crime, or if a jury trial is had, *the jury shall, if it finds the defendant guilty, also find a special verdict as to whether or not one or more persons other than the defendant or the pursuing law enforcement officer were endangered during the commission of the crime*.

It is clear from this language that the State must present evidence sufficient to prove to the jury beyond a reasonable doubt that the driver's actions threatened at least one person other than the driver and pursuing law enforcement officers with physical injury or harm.

According to Britain, the prosecutor's closing argument improperly suggested that the jury could find endangerment if it believed that Britain's actions endangered unknown persons:

As far as the Special Verdict Form, I submit to you that he did threaten Ronnie Prim, his physical security. If you jump out of a car while it's rolling, you can hurt somebody. . . . You heard [the officers'] testimony, but I submit to you as

14

a general proposition, you jump out of a car while it's moving, you threaten the safety of somebody. Might not have been Ronnie. It could have been somebody in the house, had that car rolled into a house. It's a potential for harm. Jump out of a moving car, it's dangerous, you are not only possibly going to injure yourself, but it's other people in the county out on the road in their car.

RP at 136. Our courts have not decided whether such reliance on danger to unknown persons misstates the requirements of RCW 9.94A.834.

Whether or not the prosecutor's argument misstated the law, Britain has not shown that any misstatement sufficiently prejudiced him. Because he did not object to the prosecutor's argument he must show on appeal that the prosecutor's conduct was not only improper, but so flagrant and ill-intentioned that a curative instruction could not have cured it. *Emery*, 174 Wn.2d 760-61. The prosecutor's comments were not inflammatory and did not present the potential for incurable prejudice. *See id*. at 762-63. Any potential for prejudice resulting from prosecutor's argument would have been easily cured by an instruction from the court clarifying the relevant law. Therefore, Britain has not shown flagrant and ill-intentioned misconduct sufficient to overcome his failure to object.

## V. INEFFECTIVE ASSISTANCE OF COUNSEL

Britain contends that he received ineffective assistance of counsel because his attorney (1) did not object to improper opinion testimony; (2) did not object to the prosecutor's misstatement of the law during closing argument, (3) did not object to jury instructions referring to charges not at issue, and (4) elicited testimony concerning Britain's post-arrest silence. We disagree with each of these contentions and hold that Britain received effective assistance at trial.

We review de novo a criminal defendant's claim that he received ineffective assistance of counsel. *State v. Jones*, 183 Wn.2d 327, 338, 352 P.3d 776 (2015). A defendant is entitled to

effective representation as part of his constitutional right to counsel. *State v. Grier*, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011), *cert. denied*, 135 S. Ct. 153 (2014). Representation is ineffective if (1) counsel's performance is deficient, and (2) the deficiency prejudiced the defense. *Id.* (reaffirming Washington's adoption of the test described in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). We presume that counsel's performance was not deficient and will hold otherwise only if that performance fell below an objective standard of reasonableness. *Grier*, 171 Wn.2d at 33. Strategic or tactical actions are not deficient as long as they are reasonable. *Id.* at 33. If the defendant can show that counsel's performance was deficient, he must then show prejudice by establishing a reasonable probability that but for counsel's deficient performance the outcome of the proceedings would have been different. *Id.* at 34.

1.      Opinion Testimony

Britain argues that his attorney provided ineffective assistance of counsel by failing to object to the deputies' allegedly improper opinion testimony. We disagree.

Britain's attorney's decision not to object was not deficient. "The decision whether to object is a classic example of trial tactics [that] only in egregious circumstances will . . . constitute ineffective assistance of counsel." *State v. Kolesnik*, 146 Wn. App. 790, 801, 192 P.3d 937 (2008). Moreover, "[w]here a claim of deficiency rests on counsel's failure to make an objection, a defendant must show that the objection would likely have been sustained to establish prejudice." *State v. Brown*, 159 Wn. App. 1, 17, 248 P.3d 518 (2010).

As discussed in section I supra, neither deputy gave improper opinion testimony. Therefore, the trial court likely would have overruled any objection to that testimony. Britain

has not shown any other reason why his attorney's decision not to object under these circumstances was unreasonable, much less egregious. Therefore, Britain has not shown that his attorney's performance was deficient. We reject Britain's claim that the decision not to object rendered his representation ineffective.

2.      Misstatement of Law

Britain argues that his attorney provided ineffective assistance of counsel by failing to object when the prosecutor mischaracterized the law during closing argument. We disagree.

Defense counsel's failure to object during closing argument generally will not constitute deficient performance unless the prosecutor made an "'egregious misstatement[]'" to the jury. *In re Pers. Restraint of Cross*, 180 Wn.2d 664, 721, 327 P.3d 660 (2014) (quoting *In re Pers. Restraint of Davis*, 152 Wn.2d 671, 101 P.3d 1 (2004)). Yet even in cases of egregious mischaracterization, a criminal defendant must show that the trial court likely would have sustained an objection at the time of trial. *See Brown*, 159 Wn. App. at 17.

Britain contends that his attorney should have objected to the prosecutor's misstatement of the law related to the special verdict form. However, as noted in section IV(2) above, it is unsettled whether actual or potential endangerment is required under RCW 9.94A.834. More importantly, Britain has not shown that the trial court would have agreed with the interpretation he now proposes and sustained the objection. Nor has he shown that but for counsel's failure to object, the outcome of the proceedings would have been different, given the danger posed to Prim. Therefore, Britain has not established that he was prejudiced by his attorney's failure to object.

3.      Jury Instructions

Britain argues that his attorney provided ineffective assistance of counsel by failing to object to jury instructions referring to charges not put to the jury.  We hold that Britain's attorney's performance was deficient, but that the deficiency did not prejudice Britain.  Therefore, we reject Britain's argument.

The record shows that Britain's attorney did not object to the erroneous jury instruction.  In general, determining whether a defense attorney performed deficiently by failing to object to a jury instruction turns on whether that objection would have been successful.  *See, e.g.*, *State v. Gerdts*, 136 Wn. App. 720, 727, 150 P.3d 627 (2007).  Such an objection will usually be sustained if the instruction appears likely to mislead the jury.  *Id*.  Here, the trial court clearly recognized that its instruction was issued in error and had the potential to mislead the jury.  Therefore, had Britain's attorney objected to the instruction, the trial court would almost certainly have sustained the objection.  Britain's attorney performed deficiently in failing to object.

However, Britain has not shown that this deficiency prejudiced him.  As discussed in section III(1) above, the original jury instruction only misled the jury regarding the number of verdict forms it was charged with returning.  The instruction did not mention or imply any information about Britain's other charges.  Under the circumstances, the jury could glean little beyond the existence of a clerical error, which the trial court promptly corrected.  Nothing in the record indicates that the jury's decision was in any way affected by the correction or the original issuance of the erroneous instruction.  Britain has not shown that he suffered any prejudice.

4.     Testimony Concerning Post-Arrest Silence

Britain argues that his attorney provided ineffective assistance of counsel by failing to fully investigate the facts of his case and by inadvertently eliciting commentary from Deputy Helligso on Britain's post-arrest silence. We disagree.

The case law sets out the basic standard governing the duty to investigate:

> "To provide constitutionally adequate assistance, 'counsel must, at a minimum, conduct a reasonable investigation enabling [counsel] to make informed decisions about how best to represent [the] client.'"

*In re Pers. Restraint of Brett*, 142 Wn.2d 868, 873, 16 P.3d 601 (2001) (alteration in original) (emphasis omitted) (quoting *Sanders v. Ratelle*, 21 F.3d 1446, 1456 (9th Cir.1994)).

The rules concerning comments on silence are also found in the case law. We generally treat commentary on a criminal defendant's failure to respond to post-arrest questioning as a violation of that defendant's constitutional right against self-incrimination. *State v. Easter*, 130 Wn.2d 228, 236, 922 P.2d 1285 (1996). "A comment on an accused's silence occurs when used to the State's advantage either as substantive evidence of guilt or to suggest to the jury that the silence was an admission of guilt." *State v. Lewis*, 130 Wn.2d 700, 707, 927 P.2d 235 (1996). However, a "mere reference" to the defendant's silence does not amount to such a comment. *State v. Burke*, 163 Wn.2d 204, 206, 181 P.3d 1 (2008).

Britain posits that his attorney showed a lack of reasonable investigation by eliciting commentary on Britain's post-arrest silence during the following exchange on cross examination of Deputy Helligso:

> Q.     [Y]ou said Mr. Britain had warrants. Do you know if Mr. Britain was aware of those warrants?
>
> A.     He did not answer any questions, so I don't know.

Q. So he could have been unaware? It's possible?

A. Anything's possible, yeah.

RP at 99.

Britain's attorney's questions were aimed at casting doubt as to Britain's awareness of the warrants, and therefore challenging their value as evidence of his motive for attempting to elude police. This was a legitimate trial tactic, and it was reasonable under the circumstances because the warrants were admitted only as evidence of Britain's motive for attempting to elude police. Considered in this context, there is no reason to believe that Britain's attorney did not know Britain had refused to answer questions. Because Britain points to no other evidence of inadequate investigation, we hold that the record does not establish that Britain's attorney failed to reasonably investigate the case. Therefore, the questioning by Britain's attorney demonstrated no deficient performance.

Accordingly, we reject Britain's claim that he received ineffective assistance of counsel.

VI. CUMULATIVE ERROR

Britain argues that the cumulative effect of the various errors he assigns to the proceedings below produced a fundamentally unfair trial. An accumulation of errors may prejudice a criminal defendant, even if no single error is sufficiently prejudicial. *See State v. Venegas*, 155 Wn. App. 507, 520, 228 P.2d 813 (2010). However, Britain has not established prejudice resulting from any of the assigned errors. More to the point, Britain points to no particular prejudicial effect produced by any accumulation of those errors; he simply offers the conclusory statement that his trial "was riddled with errors." Br. of Appellant at 42. Therefore, we hold that he has shown no cumulative error sufficient to deprive him of a fair trial.

No. 46616-3-II

CONCLUSION

Britain has not shown that the trial court erred, that the State committed prejudicial misconduct in its prosecution of his case, or that his attorney provided constitutionally ineffective assistance. Accordingly, we affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record pursuant to RCW 2.06.040, it is so ordered.

_____, C.J.
BJORGEN, C.J.

We concur:

_____
MAXA, J.

_____
SUTTON, J.

21